King
v.
Morford
et al.

JOSEPH KING v. JARRET MORFORD, JOHN PINTARD, and JONATHAN McCLAIN.

In decreeing specific performance of agreements, the court is bound to see that it really does that complete justice which it aims at, and which is the ground of its jurisdiction.

If the claim for a deed is not just and reasonable ; if the party has been grossly negligent of his rights, or has abandoned his contract, equity will not afford him relief.

Delay, amounting to apparent negligence, may be explained; and under special circumstances, as where there is a difficulty about the title, it presents no bar to relief in this court.

M., in 1822, enters into articles of agreement with K., to sell him a house and lot and one fourth of a wharf, for six hundred dollars, "to be paid in one year, upon receiving a good title." K. enters into possession of the premises, but is soon after ousted of the wharf by P., claiming under an adverse title; upon which M. brings an ejectment against P. to recover possession of the wharf; and the contract for the sale by M. to K. remains unexecuted until 1829, when K. tenders the money to M. and demands a deed. K. has not forfeited the privilege of coming into this court, for a specific performance, by the mere lapse of time.

If M., after entering into the agreement to sell to K., sells and conveys the same property to P. and C.; who, before they purchased, had been told "that M. had sold the premises to K.—that K. had purchased it, and had an article for it ;" P. and C. do not stand in the situation of bona fide purchasers without notice, entitled to the special favour of the court: having purchased the title of M., with notice of at least some claim on the part of K., they stand in no better situation than M. himself, and must stand or fall by the merits of the case, as it exists between M. and K.

A written contract for the sale of real estate may be waived by parol.

Where M. leased a house and lot to K. for one year, at thirty-five dollars rent, and afterwards entered into an agreement to sell the house and lot, and one fourth of a wharf, to K.; and thereupon K. pays M. thirty-five dollars, upon an understanding "that it was to be considered part of the purchase money, provided the residue was paid in one year; if not, it was to go as one year's rent, at the option of K. :" If K. afterwards agree that the thirty-five dollars thus paid should be taken as rent, and with his consent it is endorsed on the article by M. as received for one year's rent; it operates as an abandonment of the contract to purchase, and there can be no pretence for a specific performance.

So if K., after the written agreement with M. for the purchase of the property, in a conversation with M. and A., says, "that he does not want the property—that he is willing M. should sell it to A.—that he would as lieve

A. should have it as any one ;" this is an express abandonment of the contract to purchase, and though A. does not purchase, M. may sell it to another.

THE bill in this case is filed for a specific performance of a contract entered into on the 10th day of January, 1822, between Jarret Morford of the one part, and Joseph King of the other part, for the purchase and sale of a house and lot of land at Red Bank, in the county of Monmouth, and also one equal fourth part of the landing at the said Red Bank, for the consideration of six hundred dollars, to be paid "on the receipt of a good title." King complains, that after making the contract, he went into possession of the property : that he occupied the landing at Red Bank until he was forcibly expelled therefrom, and his vessel set adrift, by John Pintard and Jonathan McClain, who were in possession of the other three parts of said landing, and who have since that time kept possession of the whole : that he, King, has ever since the agreement been in possession of the house and lot, under the contract : that he has at all times been ready and desirous to comply with his part of the agreement, and pay the purchase money, but that the said Morford has neglected and refused to make and deliver a good and sufficient title for the said premises, although the complainant has tendered to him in specie the amount due ; and that afterwards, to wit, in December, 1828, Morford sold the premises to Pintard and McClain, the other defendants, who are endeavouring to obtain possession by ejectment. The bill prays for a specific performance, an account, and an injunction.

The defendant, Morford, by his answer, admits the execution and contents of the article of agreement, as set forth by the complainant ; but alleges, that before the execution of the article, he had agreed with the complainant to lease to him the house and lot, for thirty-five dollars for one year ; and that after the execution of the said articles of agreement, the complainant paid to him the sum of thirty-five dollars, which was to be considered as part of the consideration money, provided the residue was paid in one year ; but if the complainant did not comply with the said articles by paying the money in one year, which it was at his option to do, then the said sum of thirty-five dollars was to be

CASES IN CHANCERY

April, 1831.

King
v.
Morford
et al.

considered and go as one year's rent of the said premises. That afterwards, on the 15th January of the same year, the said complainant desired that the sum thus paid should be deemed and taken as a year's rent; and that accordingly the same was endorsed on the article, with the permission and consent of the complainant, as received for one year's rent. That the complainant remained in the next year, also under an agreement to pay rent; and that during all that time the complainant never offered to pay the consideration money, nor did he demand a deed; but was considered by the defendant as having abandoned the agreement and holding as a tenant from year to year. That the complainant afterwards agreed that the defendant might sell the property to one James Appleby, who afterwards declining to purchase, the defendant sold it to the other defendants, Pintard and McClain, for six hundred and thirty dollars. A deed was accordingly given and executed, and it has been duly recorded. As to the tender of the purchase money, the defendant says, that on the 18th April, 1829, after the deed was made to Pintard and McClain, the complainant invited him into his house as he was passing by, and invited him into a room where he had money counted on a table, and told him that was the purchase money for the house and lots, and desired him to make a deed according to the contract: that the defendant, believing it to be a trick, left the house. He further says, that the sale to Pintard and McClain was a bona fide sale, and that he did not communicate to them any information touching the said articles of agreement.

The other defendants, Pintard and McClain, allege that they purchased without any notice of the claim of the complainant, and, as bona fide purchasers, are entitled to the protection of the court.

The injunction originally granted, was dissolved on the coming in of the answer.

A replication was filed, and witnesses examined. The material facts proved appear in the opinion of the court.

*J. F. Randolph* and *S. L. Southard,* for the complainant. This is a proper case for a specific performance. There has been a part performance of the agreement, and if so, the court will

enforce it. The grounds of defence set up in the answer, are disproved by the evidence. The making a title to the complainant is a condition precedent, and he could not be required to perform his contract until that was done. He has done all that was necessary on his part, by tendering the money. The delay is sufficiently accounted for by the difficulty attending the title. Pintard had taken possession, and claimed to hold the wharf under an adverse title, derived from the representatives of Eseck White. Pintard and McClain are not entitled to the protection they claim, as purchasers for valuable consideration, without notice. Independent of the presumption arising from King's possession of the house, as owner, and of the wharf, until ousted by Pintard; there is sufficient evidence, that both Pintard and McClain were informed of the sale to King before they purchased. There is not sufficient evidence of any acts amounting to a waiver on the part of King. The evidence as to his agreeing that the thirty-five dollars should be taken as rent, is unsatisfactory; and his consent that Morford might sell to Appleby was conditional, and did not amount to an abandonment of the contract, or authorize a sale of the property to any other persons.

*G. Wood* and *G. D. Wall*, for defendants. Under this agreement the tender of a deed is not a condition precedent; the covenants are mutual and independent. To entitle him to a conveyance, King should have tendered the money : but there was no legal tender; it is denied by the answer, and not sufficiently proved. The original contract of sale to King must be taken in connexion with the parol understanding that followed, when the thirty-five dollars was paid : taken together, they amount to a conditional agreement, that King should pay the purchase money and take a title within a year, or continue in possession as tenant. By agreeing that the thirty-five dollars should be taken and endorsed as one year's rent, he waived the contract; and afterwards expressly abandoned it, by agreeing that Morford might sell the property to Appleby. This authorized a sale to any one else ; and it is immaterial whether Pintard and McClain had notice of the sale to King or not. The delay of the complainant, in not performing his part of the agreement,

or calling for a title until 1829, after Morford had sold and con-
veyed to Pintard and McClain, is sufficient to defeat his title to
relief.

Cases cited :—1 *Saund. R.* 320, *n.* 4 ; 9 *Ves. R.* 608 ; 10
*Ves.* 315 ; 1 *Mad.* 322–3, 363 ; *Phil.* 479 ; 1 *John. C. R.* 273,
370, 475 ; 1 *John. C.* 131, 273 ; 2 *John. C. R.* 405 ; *Sugd.*
246, 249, 282 ; 16 *Ves.* 244, 249 ; 17 *Ves.* 433 ; 1 *Mer.* 282 ;
5 *John. C.* 224 ; *New. Con.* 230–1 ; 9 *John. R.* 450 ; 6 *Wheat.*
528 ; 4 *Ves.* 686 ; 12 *Ves.* 326 ; 13 *Ves.* 225 ; 14 *John.* 15 ;
9 *Cranch,* 456 ; 1 *Peters' C. C. R.* 380; 6 *John. C. R.* 222.

THE CHANCELLOR. The defence set up by Pintard and
McClain, that they are bona fide purchasers, without notice, is
not sustained by the evidence. Independently of the inference
to be drawn from the fact that the complainant was in possession
of a part of the property, there is sufficient evidence to show that
both Pintard and McClain had that kind of information on the
subject, which would amount to notice in this court. *Ebenezer
Allen* testifies, that at the time when Pintard cast off King's boat
from the landing, which was shortly after the contract between
King and Morford was entered into, Morford told Pintard he was
sorry he had cast off the vessel ; that he had sold the lot and one
quarter of the dock to King. *Richard Borden* also states, that
he was present at a conversation between King and Pintard,
shortly after the vessel was cast from the wharf; and King then
told Pintard that he had an article from Morford that held part of
the wharf, but said nothing about the house and lot being in the
article. Pintard answered, that he cared nothing for King or
Morford ; that he had a lease from Eseck White to hold the dock,
and had nothing to do with them. *David Taylor* states, in his
evidence, that he had a conversation about this property with
McClain, when King first took possession of the house, in which
conversation he told McClain that King had purchased the pro-
perty.

It follows, then, that Pintard and McClain do not stand in the
situation in which they are represented by the answer. They are
not bona fide purchasers without notice, and as such entitled to

special favour in this court. They purchased the title of Morford, having notice of at least some claim on the part of King, and thus purchasing, they stand in no better situation than Morford himself. They must stand or fall by the merits of the case as it exists between the original parties.

April, 1831.

King
v.
Morford
et al.

The original article of agreement is admitted by both parties. The contract appears to have been a valid one. The consideration was bona fide ; and there is nothing like fraud, mistake, or surprise, that can be alleged against it. King, the complainant, went into possession under it, and is still in possession of the house and lot. The evidence shows, that if he ever had possession of any part of the wharf, he was very soon ousted by Pintard, who claimed it under a lease from Eseck White.

What, then, are the objections to a specific performance of this contract? On the part of Morford they are various.

*The first* is, that the claim is a stale one ; that the contract was entered into in 1822, and no step taken to complete it on the part of King until 1829, after Morford sold to Pintard and McClain. It must be understood, however, that King was in possession of at least part of the premises ; that he had been ousted from the residue ; and that Morford, the vendor, was prosecuting an action against those who had disturbed King in the enjoyment of his rights. Under these circumstances, it would be too strict to say that King had forfeited the privilege of coming into this court by mere lapse of time. Delay, amounting to even apparent negligence, may be explained ; and under special circumstances, as where there is a difficulty about the title, it presents no bar to relief in this court: *Sug. on Vendors*, 280, 282. The facts in relation to this part of the case, are very different from those presented by the bill and answer at the time the motion was made to dissolve the injunction. And although I think it very clear that the complainant has not strictly pursued his rights, yet if the case stood on this point alone, I should be inclined to give him relief.

*The next* ground of defence is, that it was agreed at the time of the original contract, or very soon after, that if the purchase money was not paid in one year, the thirty-five dollars paid by King should be considered as one year's rent of the premises ; that

King himself agreed that the money thus paid should go as rent; that it was endorsed on the article as so much rent received by Morford; and that, after that time, King occupied as a tenant, and not as a purchaser.

There has certainly been a good deal of looseness about this transaction, and it is difficult to reconcile all the testimony. If the thirty-five dollars was received and paid as rent, it operated as an abandonment of the contract, and there can be no pretence for a specific performance. But that it was so paid and received, is at least a matter of doubt. The testimony of *Timothy White*, relative to the repairs to the house, and the conversation he had with King about the payment of rent, would lead to the belief that King was there at that time as a tenant. Other circumstances, and the testimony of other witnesses, would lead to a different conclusion. There is reason to believe that both parties acted in this matter with great carelessness; and the complainant, in coming here for extraordinary relief, has not presented himself under the most favourable aspect for the consideration of the court.

Without, however, going so far as to say that this objection, standing by itself, would be available in the mouth of the defendant, I am satisfied, that when taken in connection with the next ground of the defendants' defence, it must prevail.

*This ground* is, that the complainant waived and abandoned the contract in express terms, before the sale of the property to Pintard and McClain. That a waiver may be by parol, is now well settled, notwithstanding the old rule, " *unum quodque dissolvi eo ligamine quo ligatum est.*" *Sugd.* 109; *Stevens* v. *Cooper*, 1 *Johns. C. R.* 429. The inquiry is, therefore, as to the fact.

It is in evidence, by the testimony of *James Appleby, jun.*, that in the fall of 1828, he was desirous of purchasing this property, and called on Morford to know if he would sell it. Morford said he would sell, but must see King, as he was under obligations to him, some way or other, to give him the refusal. Morford told witness he would let him know in a few days, and in the mean while would see King concerning it. He afterwards saw King, and then King, Morford and witness had a conversa-

tion about it, in which King said he was willing that witness and his brother should have the property. He also said "*he did not want the property,* and that he would as lief, or a little rather, that witness should have it as *any other persons.*" Soon after, Morford sold the property to Pintard and McClain, and after all this the alleged tender of the purchase money was made by King. It may be true, as urged by the complainant's counsel, that the complainant was willing that Morford should sell to Appleby, inasmuch as he expected to receive the privilege of running his boat to the wharf. This may have been his motive; but if the language of the witness is in any degree correct, the inference to be drawn from it is a much more extended one. After telling Morford he did not want the property; that Appleby might take it; that he would quite as soon, and perhaps rather, he should have it than any other person;—I do not see how he can call for a specific performance, although the sale was not to Appleby, but to some other person. Suppose the negociation with Appleby had failed, can it be that it would have been necessary to consult Mr. King again, as to any other disposition of the property? I think not. The privilege appears to me to be complete; and having been acted on, and a sale having taken place in consequence of it, I feel constrained to consider the contract as expressly abandoned by the complainant: at least, he has placed himself in a situation, which does not call for the interference of this court, to aid him in carrying the contract into execution.

Whether or not a contract shall be ordered to be specifically performed by this court, is always a matter resting in sound discretion. "The jurisdiction," says Ld. Eldon, in 12 *Ves.* 331, "is not compulsory upon the court, but the subject of discretion. The question is not, what the court must do, but what it may do under the circumstances." If the claim for a deed is not just and reasonable; if a party has been grossly negligent of his rights, or has abandoned his contract, equity will not afford him extraordinary relief. The strict rule is this, that the party who comes into equity for a specific performance, must come with perfect propriety of conduct, otherwise he will be left to his remedy at law. This rule may be considered too strict. But I do think, with Ld. Redesdale, 2 *Sch. and Lef.* 554, that conside-

36

rable caution should be used in decreeing the specific performance of agreements, and that the court is bound to see that it really does the complete justice which it aims at, and which is the ground of its jurisdiction.

After a very careful examination of this case, I cannot satisfy myself that the complainant stands in such a situation as to warrant a decree in his favour at the hands of the court.

As to retaining the bill for compensation, as was suggested by one of the complainant's counsel, it is only necessary to remark, that there is nothing in this case which would render such a course proper. It has not been shown that King has made any permanent improvements on the property. What has been done has been at the expense of Morford, and not of King. If King has sustained damage by being kept out of possession of the wharf or landing, his proper remedy is at law.

The bill is ordered to be dismissed, but without costs.