JOHN MILLER v. GEORGE R. CHETWOOD and others.

Upon a bill for specific performance of a written agreement, it is competent for the defendant to prove parol declarations made at the time of the contract, though not incorporated in the agreement, in order to rebut the complainant's equity.

The admissibility of such evidence depends upon the purpose for which it is introduced. It is admissible for the purpose of defeating the specific performance, but will not be received with a view to having the contract performed with an abatement of the price.

This court, on a bill for specific performance, not being bound to aid the complainant unless his claim is founded in justice, will look into all the circumstances, and see whether any fraud was practised at the time of the sale.

If misrepresentations were made at the time, though not in the writing, calculated to mislead in any essential particular, the party will be left to his remedy at law.

On a bill for a specific performance, the court will grant its aid or not, according to the justice of the case; and it will never interfere where the party has practiced any fraud, or been guilty of misrepresentation in any material particular.

That the purchaser bought by the lot or parcel and not by the acre, that the land was before his eyes and subject every day to his observation, can furnish no excuse to the vendor for his misrepresentation. He is bound to declare the truth at any rate.

BILL filed October 11th, 1836, for a specific performance of the following agreement :—

"Article of agreement made and entered into this seventh day of August, in the year of our Lord one thousand eight hundred and thirty-five, between John Miller, of Elizabeth-Town, in the county of Essex, and state of New-Jersey, of the first part, and doctor George R. Chetwood, of the same town, county and state, of the second part. This witnesseth, that the said George R. Chetwood hath bought of the said John Miller, for the sum of five thousand dollars, good and lawful money of the United States of America, all that tract and parcel of land lying and being in Elizabeth-Town, in the county of Essex, and state of New-Jersey ; bounded west and north by land of Isaac Jaques,

[Miller v. Chetwood et al.]

east by land of the late Thomas Price, deceased, and south by the road leading to Elizabeth-Town Point. The condition of this agreement is, that the above named George R. Chetwood shall pay to the said Miller one thousand dollars on the first day of September next, when the said Miller will give a good deed of said land; the remaining four thousand dollars to remain on bond and mortgage, with interest from date; that is, two thousand dollars on the first day of April next, and two thousand dollars on the first day of April, one thousand eight hundred and thirty-seven. The said Miller has reserved to himself all wood, crops and moveables, and has to the first day of May next to take off said wood, when the possession will be given to the said doctor Chetwood."

The cause was brought to a hearing on the pleadings and proofs, on the 29th of April, 1839.

*Elias Vanarsdale, jun.* for complainant, insisted that the court has jurisdiction. 2 *Story's Eq.* 23, sec. 716; 5 *Peters' Rep.* 264; *Newland on Contracts*, 88.

Evidence touching the value of the land is irrelevant, because inadequacy of price is not insisted on by way of defence in the answer. Fraudulent representation is the only ground set up in the answer. 1 *Simon's Rep.* 376, cited in 2 *Cond. Eng. Ch. Rep.* 191.

Fraud will not be presumed. The party setting up fraud must prove it. 8 *Peters' Rep.* 253; 2 *John. Chan. Rep.* 633; *Saxton's Rep.* 322; *Sugden on Vendors*, 89, 92, 117.

Parol conversations previous to the agreement, are not admissible. Whatever may have been said about the quantity of land, as it was not inserted in the agreement, cannot bind the parties. 1 *Peters' Rep.* 600; 4 *Taunton,* 779; 4 *Brown's C. C.* 518; 2 *W. Black.* 1249.

If the purchaser meant to contract for nine acres, he should have provided for it in the agreement. 3 *Merivale*, 704; 2 *John. Rep.* 39; 5 *Mass. R.* 357.

[Miller v. Chetwood et al.]

Had the land turned out to be more than nine acres, the vendor could have had no relief. 8 *Cranch*, 375.

Complainant's counsel also cited 17 *Vesey*, 25; 2 *Freeman*, 107; 4 *Kent's Com.* 466; 6 *Paige's Rep.* 254.

*J. J. Chetwood*, for defendants, contra. The defendants do not seek the interference of the court. The complainant asks equity, and he must do equity. The defendants rely upon two grounds:—1. Misrepresentation by the vendor as to the number of acres. 2. The enormity of the price.

1. The misrepresentation here is of the essence of the contract. It makes a difference of one third to the purchasers. A court of equity will not compel a specific performance where there has been a fraud or concealment as to the number of acres. *Winch* v. *Winchester*, 1 *Vesey and B.* 378; *Veeder* v. *Fonda*, 3 *Paige*, 98, 99; *Mortlock* v. *Buller*, 10 *Vesey*, 292; *Dyer* v. *Hargrave, Ibid*, 507; *King* v. *Morford and others, Saxton*, 274; *Rodman* v. *Zilley et al., Ibid*, 321, 328.

*I. E. Williamson*, for defendants. The complainant asks the relief sought, not as a matter of right, but of favor. A contract may be binding, and yet the court may not think it a proper case to decree a specific performance. Parol evidence is always admissible to meet the equitable matter upon which the complainant asks the aid of the court. The important distinction is, whether the evidence is offered by the complainant or the defendant. A defendant will be allowed to prove by parol any thing which will rebut the equity of the bill. *The Marquis Townshend* v. *Stangroom*, 6 *Vesey*, 328, 333; 4 *Brown C. C.* 519, *n.*; *Woollam* v. *Hearn*, 7 *Vesey*, 211, 218, 219.

Misrepresentation, though in a slight degree, is an objection to a specific performance. The party's remedy is by action of covenant at law. *Cadman* v. *Horner*, 18 *Vesey*, 10; *The Mechanics' Bank of Alexandria* v. *Lynn*, 1 *Peters*, 382-3.

This was a representation wilfully made by the complainant. But even if the representation were not made wilfully, the court

[Miller v. Chetwood et al.]

would not compel a specific performance. *Veeder* v. *Fonda*, 3 *Paige*, 94, 98; *Hill* v. *Buckley*, 17 *Vesey*, 398.

Again, this was a hard and unreasonable bargain. The court will not enforce, by its extraordinary aid, these speculating bubbles, but leave the parties to their remedies at law. It will not interfere in order to enforce these hard bargains even when fairly entered into. *Barnadiston* v. *Lingood*, 2 *Atkyns*, 134; *Buxton* v. *Lister et al.* 3 *Atkyns*, 386; *Townshend* v. *Stangroom*, 6 *Vesey*, 328; *Mortlock* v. *Butler*, 10 *Vesey*, 292.

The bill ought to be dismissed with costs. If the misrepresentation made by the complainant was wilful, costs should be allowed against him.

*E. Vanarsdale*, for the complainant, in reply. The only defence set up in the answer, is the deficiency in the quantity of land; the defendant, therefore, can rely upon no other. The court must be confined to the issues framed by the pleadings. The date may or may not be of the essence of the contract; in like manner the quantity of land may or may not be of the essence of the contract. A refusal of a decree must be for some misrepresentation about that which is of the essence of the contract. 4 *Kent's Com.* 466.

The contract in this case was for the sale of land by *certain boundaries*, and not by number of acres or quantity. There is no pretence of deception in the boundaries. The purchaser knew the lot, lived in the same town, and could see it every day. It was the defendant's folly not to have ascertained the quantity. The complainant never had it surveyed. It was done by computation and estimate. The evidence shows it to have been a bargain for the lot, and not for any specific number of acres. Quantity was not of the essence of the contract.

As to hard cases, they must be so at the time the contract was made: they cannot be made by a change of times. The price, at the time of the contract, was not exorbitant.

[Miller v. Chetwood et al.]

THE CHANCELLOR.    The object of this suit is to compel a specific performance of a contract made by the defendant, George R. Chetwood, with the complainant, on the seventh of August, in the year eighteen hundred and thirty-five, for the purchase of a lot of land in Elizabeth-Town.    The agreement is in writing, and by it, Chetwood agrees to purchase the land for five thousand dollars.    The land is described as "lying and being in Elizabeth-Town, in the county of Essex, and state of New-Jersey; bounded west and north by land of Isaac Jaques, east by land of the late Thomas Price, deceased, and south by the road leading to Elizabeth-Town Point."    This is the only description of the premises contained in the writing : there are no courses given, nor is the quantity of land stated.    One thousand dollars of the purchase money was payable on the first day of September next after the date of the agreement, when the deed was to be executed, and the remaining four thousand dollars, with interest, to be secured by mortgage on the premises, payable, two thousand dollars thereof on the first day of April then next, and the remaining two thousand dollars on the first of April, eighteen hundred and thirty-seven.    The first payment of one thousand dollars has been made, and the remainder is still unpaid.    There is no difficulty or question made as to the tender of the deed at the time fixed by the agreement; the legal formalities, in this respect, appear to have been complied with on the part of the complainant.    The defence is placed by the answer on a single point; that the complainant, at the time of negociating the said contract, and before and at the time of executing the aforesaid agreement, represented expressly to Mr. Chetwood that the said tract of land contained about nine acres, whereas when the deed was tendered it appeared that there was in reality but six acres and sixteen hundredths of an acre—being a less quantity by nearly one third than the party supposed he was purchasing. Chetwood declares he would never have purchased and agreed to pay so large a sum for the land, but from a confidence in the truth of the foregoing statement as to the quantity ; that the writing was drawn in a hurry, was intended only as a memo-

randum of the terms upon which the land was sold, and was not considered at the time as in any degree governing the quantity. Upon these grounds the defendants insist that the complainant is not entitled to the aid of this court.

The first subject of inquiry in this case must be, to ascertain how the facts are ; for these are matters of defence which must be proved. There is no dispute that the actual quantity of land is only six acres and fifteen or sixteen hundredths. The deed tendered to the defendant makes it six acres and sixteen hundredths of an acre, and Mr. Marsh, a surveyor who has made a calculation of the contents of the deed, makes it six acres and fifteen hundredths of an acre, differing only one hundredth of an acre. From the evidence of Lucy Moore, a witness on the part of the complainant, and of doctor James Bell, a witness on the part of the defendants, (these being the only persons present at the execution of the papers,) the course of the transaction was this : Chetwood applied to the complainant for the purchase of the land, and which it was very evident he was anxious to obtain ; the price was agreed on, and to bind the complainant the defendant paid fifty dollars, and took a receipt specifying on what account the same was paid. This was done in the presence of Mrs. Moore, at complainant's house, and no doubt, as she says, to secure the purchase. Nothing was said at that time about the quantity of land. Mrs. Moore saw only the first paper signed, being the receipt for the fifty dollars. The parties thinking some further writing necessary, the complainant himself drew up the agreement on which he now rests, of which there are counterparts, one signed by the complainant and wife, and the other by the defendant, Chetwood. This last agreement must be the one referred to by doctor Bell in his evidence, which he declares was executed at the defendant's office, with whom he was at the time studying medicine ; and he declares that previous to signing the agreement, " doctor Chetwood asked the complainant what the quantity of land was, and complainant said about nine acres." Upon his cross-examination the witness could not be positive that the above conversation about the quantity was before or

after signing the paper, but thinks it was before. They had before them at the time the receipt for the fifty dollars, and the agreement. There does not appear to be any conflict between these witnesses : their statements are entirely consistent with each other. It may be all true, that when the receipt for the fifty dollars was signed, nothing was said about the quantity of land, and yet it may have been often stated in the course of conversation previously thereto, and have been explicitly referred to when the agreements were exchanged at the office of doctor Chetwood.

These are the only witnesses who can speak of what took place directly between the parties, and by that alone, as there is nothing to impeach in any way the testimony of doctor Bell, I should feel fully satisfied that the complainant did in truth rep-resent the quantity of land to be about nine acres But there are other strong facts corroborative of this conclusion. The complainant declared, about the time of this sale, to several other persons, that there was about nine acres in the tract. He did so to Meline W. Halsey, to Elijah Kellogg, to Keen Pruden, and to George W. Halsted. In fact the complainant, when spoken to on the subject by John J. Bryant, said, " he did not know that he told doctor Chetwood that the property contained nine acres, but he might have done so, as he always thought it contained nine acres and thought so still." He even went into a calculation to show that he had purchased several parcels, and after selling off parts of the same it left nine acres. All this conversation, although not carried on in the presence of doctor Chetwood, goes to confirm, or at least to render it highly probable, that the complainant spoke of this land as containing the nine acres.

Thus far it would seem like a representation of the quantity made by the complainant under a misapprehension on his part, and particularly so as he derived his knowledge, not from an actual survey of the lot in question, but by a calculation made up from the amount he originally purchased, deducting therefrom the amount he had sold off. But there are other parts of the

evidence which, to say the least, are embarrassments in the way of coming to so charitable a conclusion. It seems that to James F. Meeker, the assessor of the township of Elizabeth, in the year eighteen hundred and thirty-five, (the very year this contract was made,) the complainant gave in this land at its true quantity of six acres and a small fraction; and as fractions were not counted by the assessors when under half an acre, the land was actually taxed at six acres. To Major Denman also, shortly after the sale to doctor Chetwood, he said he believed there was in the lot between six and seven acres. Isaac Jaques, the very man who made the last purchase of part of the complainant's land previous to doctor Chetwood, says, he understood the balance left was between six and seven acres. To Mr. Halsted, the complainant, a short time before the agreement in this cause, after saying that the lot in question contained about nine acres, stated, that the property had been surveyed by Mr. Dayton, (whether it was the whole tract, or only the part sold to Jaques, witness did not recollect,) and that the complainant carried the chain; that he carried the links of the chain very loose, did not pull it tight, and that the survey as made by Mr. Dayton made it about nine acres.

The fact, then, I consider established, that the complainant did represent to the purchaser, at the time of the sale, that there were about nine acres, when in truth there were but six acres and sixteen hundredths of an acre. How far this misrepresentation was wilfully made, it is not, perhaps, necessary for me to decide, though I could wish there was less reason from the evidence to think it was so made.

It is objected, however, that all this evidence is incompetent, and must be overruled, because, whatever might have been said, it was not incorporated in the agreement, and therefore cannot be used. The agreement, it must be remembered, was drawn by the complainant himself, and is silent as to the quantity of the land. A number of cases at law were cited by the complainant's counsel, to show that parol evidence is inadmissible to contradict or vary a written agreement, but those cases cannot

control the present question. In an action upon the covenant, the party must rely upon his agreement, and it would be dangerous to let him recover upon any representations or statements made at the time which were not embodied in the agreement. In the present case, the extraordinary aid of this court is asked by the complainant, beyond his common law remedy, and in such case the defendant may be allowed this evidence to rebut the complainant's equity. All the cases recognize this distinction, and it is founded in reason. This court, not being bound to aid the complainant unless his claim is founded in justice, will look into all the circumstances, and see whether any fraud was practised at the time of the sale. If representations were made at the time, though not in the writing, calculated to mislead in any essential particular, the party will be left to his remedy at law. There is a difference, also, in the admissibility of the evidence in this court, whether it be offered by the complainant with a view to compel a specific performance, or by the defendant to rebut the equity of the complainant. The true rule, as it appears to me, is to be found in the case of *Winch* v. *Winchester*, 1 *Vesey and Beam*, 378. There the court would not receive parol evidence with a view to the defendant's having the contract performed with an abatement of the price, but it was admitted to defeat altogether the specific performance. The authorities on this subject will be found in a note to the case of *Rich* v. *Jackson*, in 4 *Brown's C. C.* 519.

The facts having thus been established by competent evidence, the question is fairly presented, whether the complainant has entitled himself to the interference of this court. In the case just cited from 1 *Vesey and Beam*, the written description of the land was, " containing by estimation forty-one acres, be the same more or less." The quantity turned out to be less than that named by five acres and a fraction. The master of the rolls refused a decree and dismissed the bill. For the general rules applicable to this case, I refer to *Mortlock* v. *Buller*, 10 *Vesey*, 292. In the case of *Cadman* v. *Horner*, 18 *Vesey*, 11, the master of the rolls says, " as upon the evidence the plaintiff has

been guilty of a degree of misrepresentation, operating to a certain, though a small extent, that misrepresentation disqualifies him from calling for the aid of a court of equity, where he must come, as it is said, with clean hands. He must, to entitle himself to relief, be liable to no imputation in the transaction." The same views will be found to be taken in the state of New-York, and in this court. See *Veeder* v. *Fonda,* 3 *Paige,* 97; *King* v. *Morford and others, Saxton,* 274; *Rodman* v. *Zilley and others, Saxton,* 321. In the case of *King* v. *Morford, Saxton,* 281, chancellor Vroom says, "the strict rule is this, that the party who comes into equity for a specific performance, must come with perfect propriety of conduct, otherwise he will be left to his remedy at law. This rule may be considered too strict; but I do think, with lord Redesdale, 2 *Sch. and Lef.* 554, that considerable caution should be used in decreeing the specific performance of agreements, and that the court is bound to see that it really does the complete justice which it aims at, and which is the ground of its jurisdiction." The case of *Trower* v. *Newcome,* cited by complainant's counsel from 3 *Merivale,* 704, is placed upon the express ground that the representations made by the printed particulars at the sale were so vague and indefinite that the court could not take notice of it judicially, and were only sufficient to have put the purchaser on inquiry. That case cannot be considered as affecting the current of decisions.

The general principles which I extract from the cases, are, that on a bill for a specific performance, the court will grant its aid or not, according to the justice of the case; and that it will never interfere when the party has practiced any fraud, or been guilty of misrepresentation in any material particular. In the present case, it is insisted that the quantity of land was not material; that the purchaser bought by the lot or parcel, and not by the acre; and that, as the land was before his eyes, and subject every day to his observation, he could not have been imposed upon. The plain answer to all this argument is, that it can furnish no excuse to the complainant for his misrepresentation. He

was bound to declare the truth at any rate, and not having done so, I cannot say, according to the case in *Saxton*, that he comes here " with perfect propriety of conduct." But can it be pretended, that in the purchase of a vacant lot, it makes no difference to the purchaser whether it contains six or nine acres? The defendant has said in his answer, that he never would have purchased at the price he gave, had he not relied on the quantity of nine acres, as stated by the complainant, and he offered to fulfil his contract if a rebate was made for the deficiency in acres.

It is true the defendant saw the lot daily, but the eye cannot tell the number of acres. We may be greatly deceived. The defendant went into this agreement, undoubtedly, with too much haste; he should have surveyed the land; but still it can furnish no justification for the complainant.

I am constrained to say, in view of the authorities, and the sound principles on which they proceed, that the circumstances of this case are such as not to entitle the complainant to the aid of this court. I shall order the bill dismissed, but without costs.

Decree accordingly.