The defendant Gross, January 14th, 1922, sold the Newark Cleaning and Dye Works, on Broom street, Newark, to the three complainants Green, Slatoff and Colten, by transferring all the capital stock. The sale included a leasing by Gross to the Newark company of the building in which the plant was located and an option to purchase the leased premises, and also a retail shop — part of the plant. The business of the company is that of cleaning and dyeing garments for retail dealers; they gather the trade. The price was $25,000 cash and a chattel mortgage for $20,000 (the present investment is upwards of $100,000), and in consideration Gross, who was well known in the trade, covenanted —
"Not to engage in the wholesale and retail cleaning and dyeing business in the city of New York and State of New Jersey for a period of fifteen years from the date hereof, either directly or indirectly, or as servant, agent or principal or by means of any connection directly or indirectly with *Page 363 
any corporation, firm or individual or through a member of his family.
"It is especially understood and agreed that the agreement shall not bar the said Samuel Gross from engaging in the wholesale or retail rug and carpet cleaning business and the cleaning of curtains, in which business the said Samuel Gross is hereby authorized to engage."
The explanation of the exception is this: Gross at the time was the owner of the Lincoln Rug and Carpet Cleaning Company, engaged in the cleaning and dyeing of rugs, carpets, curtains and household goods generally, on Beacon street, Newark, and this business he was to carry on. Garment cleaning and dyeing is a distinct trade from that of cleaning and dyeing of rugs and carpets, c.; the process is different. The Newark company was equipped for the cleaning and dyeing of garments; the Lincoln for the cleaning and dyeing of rugs, carpets, c.
In the latter part of 1924 Gross bought the old Connett Hat Factory, 71-83 Richmond street, Newark, and had it conveyed to his company, the Beacon Realty Corporation. It consisted of two bridge-connected buildings facing the street. Soon thereafter Gross moved the Lincoln plant to Richmond street and interested the defendants Hockberg and Schachter to become tenants. They incorporated the Washington Cleaning and Dyeing Company. The Washington company occupies the two lower floors of the southerly building; the Lincoln the one adjoining on the north. The one is engaged in the cleaning and dyeing of garments, the other cleaning and dyeing of rugs, carpets and household goods. The complaint in this respect, in substance, is that the Washington company is Gross; that Hockberg and Schachter are his dummies; that Gross is violating his covenant, and that the three are conspiring in its breach. The proofs do not bear out the charge. The Washington company belongs to Hockberg and Schachter and one Rutgen, who took an interest after this suit was started; each have $15,000 worth of stock. In the beginning Hockberg had $10,000 worth of stock and Schachter $20,000. Hockberg's initial investment was $2,500 and his promissory note to the company for the balance, secured *Page 364 
by his stock. Schachter, up to the hearing, had paid in $17,000. Rutgen has $10,000 invested and the balance is secured by his stock as collateral. And the company has incurred heavy obligations in outfitting. Gross has no financial interest in the business and never had, so the incorporators testify, and there is nothing to the contrary. Gross no doubt created the opportunity for the incorporators of the Washington company to engage in the business in competition with the Newark company, and the incorporators availed themselves of it knowing of his covenant, but the covenant does not proscribe this. The covenant is not violated unless Gross "engage" in the business. That he shall not do so "directly or indirectly or as servant, agent or principal, or by means of any connection directly or indirectly with any corporation, firm or individual or through a member of his family," simply defines the capacities in which he shall refrain from engaging in the business. This language does not enlarge the covenant. It does not prohibit him from facilitating and even encouraging others to enter the competitive field, if he stop short of engaging with them in carrying on the business. It would be manifestly unjust to restrain the Washington company and its incorporators from continuing in business. As to them the bill will be dismissed.
As to Gross the situation is different. He has been chafing at the bit ever since the covenant. His lifelong occupation has been the cleaning and dyeing business in all its branches, and he has been fretting to get back somehow, some way. While the Lincoln Rug and Carpet Cleaning Company was still in Beacon street, in 1923, he cleaned and dyed garments. He denied it; said it was the business of his employe Heimbrick. A trade name certificate of Lincoln Dye Works was filed by Heimbrick, but the business was carried on under the same roof and management of the Lincoln Rug and Carpet Cleaning Company, and garments were gathered and delivered by the company's delivery, and checks in payment of the work bore the endorsement of the Lincoln Rug and Carpet Cleaning Company. The explanation of the checks is that they were cashed for Heimbrick by Gross, but the conviction from all the testimony is, and there is much, that Lincoln *Page 365 
Dye Works and Heimbrick were mere camouflage to serve Gross' intrusion upon his covenant.
An effort to get back into the trade was made by Gross in the summer of 1924 by dispossess proceedings against the Newark company for breach of a covenant in the lease not to make alterations in the building without the landlord's consent, and for non-payment of rent, and by a bill to foreclose the purchase-money chattel mortgage for the breach of the lease and the non-payment of the rent. A month's rent was due and the alterations were essential. While Gross may have been strictly within his legal rights, the turn was a short one and indicative of his purpose. The effort was frustrated by the Newark company exercising the option to purchase.
Then, Gross purchased the Connett factory. The complainant Newark company had branched out into the cleaning and dyeing of rugs and carpets, competing with Gross, and he was vexed, and he determined upon competition in the garment cleaning and dyeing business. He installed appliances for garment cleaning which the incorporators of the Washington company later took over. Gross, however, continued to conduct himself in and about the business so as to give the impression to the trade that he was behind the new concern; that he had a hand in the management. He helped fit up the place, sponsored the electric power and gasoline agreements and invited the executive committee of the local cleaners association to a conference and discussed with them prices and policies and advantages to them of the new plant. Gross' pretended connection with the Washington company was as influential upon the trade as if he were the owner, and this with design on his part to garner the trade to the injury of the Newark company, and to that extent Gross engaged in the business in violation of his covenant. That he was so engaged without profit is immaterial. That he was prompted as an anxious landlord is beside the question. He sought to give the appearance that the Washington company was Gross' establishment; that Gross was again in business, and in that he overstepped the mark, and as there can be no assurance that he will not again be guilty an injunction may go against *Page 366 
him in the language of the covenant, and particularly in respect of the matters in which he has transgressed.
After the preliminary injunction, in the language of the covenant, was issued, Gross continued dyeing rugs and carpets in violation of its mandate, and on hearing professed ignorance and innocence, that he always understood that the covenant was not intended to apply to the business carried on by the Lincoln company, that of cleaning and dyeing of rugs, carpets and household goods. It is perhaps true that it was so understood, but that Gross was not sensible that the injunction was comprehensive, and that he was ignorant of its violation is not accepted; he took a chance. When called to account he took over the Lincoln company's machinery and utensils for cleaning rugs and carpets and sold the concern to Heimbrick, his employe, to carry on the dyeing end. This appears to have been a mere gesture, as Gross admits he expects or hopes to get it back if the injunction is lifted. There can be little doubt that under the arrangement, in the meantime, Gross is reaping some, if not all, the profits and that Heimbrick is his manikin, as he was in running the Lincoln Dye Works. Gross is receiving $200 weekly from this source, but how, there is no explanation.
In this situation Gross, by counter-claim, asks that the covenant be reformed so as to permit him to dye rugs, carpets and curtains, and that "curtains" be construed to include "portieres." The temporary injunction was modified twicependente lite to permit these things, because it appeared then, and it does now, that the covenant was not intended to prohibit them. The "inconveniences" pending injunction was the only consideration at that time. The litigation was protracted; it was begun nearly three years ago, and the last brief came in during this writing. The question whether Gross was entitled to relief, in view of his conduct, was expressly reserved, as counsel well understood, and the orders will show that the temporary relief was to play no part in the final decision. Gross as a supplicant for equity's aid comes with unclean hands. His earlier evasion of the covenant through the medium of the Lincoln Dye Works; the oppressive dispossess and foreclosure suits; his violation of the *Page 367 
terms of the injunction and his dissembling sale of the Lincoln company to Heimbrick after the exposure, all testify to his spirit of antagonism towards his covenant and the covenantees and his determination to break it and them. To that end and in malice he started the plant, now the Washington company, in competition. What he dared not do directly he accomplished by indirection, and he made his boast that he would. By meddling in its affairs and purposely creating an atmosphere in the retail trade that the new establishment was under his control, he violated the spirit of the covenant, and as harmfully as though he had in fact breached it. In such circumstances, where a suitor is himself guilty of unconscionable conduct in the transaction, a court of equity will remain passive. Pom. Eq. Jur. § 397;; Pendleton v. Gondolf,85 N.J. Eq. 308; Prindiville v. Johnson Higgins, 93 N.J. Eq. 425; Gluck v. Rynda Co., 99 N.J. Eq. 788. The prayer of the counter-claim will be denied.