The bill is to compel the defendant to execute a bond and mortgage. In 1925 the defendant leased to one Makaus premises on Pavonia avenue, Jersey City, for twenty-five years, with an option for a further lease of twenty-five years. The lease was assigned to one Reich. He assigned to Weisenfeld, an officer of complainant, who transferred it to the complainant. The lease contains this provision: *Page 291 
"The lessor does hereby agree and authorize the lessee at any time during the term of this lease to tear down the building now occupying said demised premises, and to erect a building, the plan thereof to be chosen and decided upon by the lessee upon the said demised premises. That the said lessor shall permit the said lessee, his successors or assigns to raise cash to an extent not to exceed two-thirds [2/3] of the value of the cost of said improvement, which money is to be secured by a bond and mortgage to be executed by the lessor, its successors or assigns, and to be a lien upon the said demised premises, and the buildings and improvements thereon. That said two-thirds of the cost of the said improvement is not to exceed the sum of fifty thousand dollars [$50,000]; that the said bond and mortgage shall remain a lien upon the said demised premises and the improvements erected thereon.
"It is further agreed that the lessee shall pay all interest on the said mortgage, so raised during the term of this lease, or the term of the said bond and mortgage, said interest to be paid within thirty days from the due date.
"It is further agreed that the improvements so made on the said premises shall be the property of the lessor, subject to this lease."
The complainant erected a new building at an outlay of $150,000 and arranged with a local insurance company for a mortgage loan of $50,000, and upon the defendant refusing to execute a bond and mortgage to secure the loan, the complainant appealed to this court. In its answer defendant admits refusing to execute the bond and mortgage in the form requested, but expresses its willingness to execute such documents in accordance with the requirements of the lease, and at the hearing protested that the proposed mortgage, one for a five-year term, with interest at five and one-half per cent., containing an acceleration clause upon a thirty-day default in payment of interest, had not been agreed upon, and advanced the technical defense that the contract in this respect is not complete, certain and definite, and hence, equity will not decree a specific performance. Nichols v.Williams, 22 N.J. Eq. 63; Moore v. Galupo, 65 N.J. Eq. 194;Binns v. Smith, 93 N.J. Eq. 33. When a complainant has performed his part of a contract and the defendant has reaped the advantages, equity will not permit defendant to escape his responsibility upon a plea that his corresponding obligation is not definitely set down. In such circumstances, when a contract has been partly executed, and there is no adequate *Page 292 
remedy at law, equity "will strain its power to enforce complete performance." Fry Spec. Perf. (6th ed.) 155; Cavanna v.Brooks, 97 N.J. Eq. 329.
It is, however, an inflexible rule, that to entitle a suitor to the extraordinary relief by specific performance, he must seek it "with perfect propriety of conduct." The complainant charged in its bill and at the hearing insisted that the debt of the bond and mortgage will be the defendant's obligation to pay, urging that the clause quoted at the forehead bound the defendant hand and foot, and that explanatory testimony was inadmissible. It was admitted over objection. Miller v. Chetwood, 2 N.J. Eq. 199.
An analysis of the clause will not subject it to the interpretation sought to be imposed by complainant. The lessee was authorized to raise cash, two-thirds of the value of the improvements, for which the lessor's bond and mortgage was to stand as security.
It was the lessee's project, and to put him in funds the lessor and the property were to stand sponsor for the loan. The lessee was to borrow the money on the strength of the security of the lessor's bond and mortgage. Inter sese the lessee was to be the debtor. The correctness of this conception of the clause finds confirmation in the requirement that the mortgage shall remain a lien on the demised premises. To whose advantage, possibly, could this provision be if not for the lessee who ultimately was to redeem the obligation? Why should the mortgage remain a lien if it was to be the lessor's duty to pay if it chose to satisfy it before? The only reasonable explanation is as the lessee testified, that he had planned to amortize it over the period of the lease. And that that was the scheme of the complainant when it succeeded to the lease, is also the testimony. If doubt remains as to the true meaning it is set at rest by the defendant's own interpretation. On November 20th, 1928, while Mr. Weisenfeld, who with his father-in-law, Stein, owns the stock of the complainant, an officer of the company, and an intermediate assignee of the lease, was negotiating the loan of $50,000 on behalf of the complainant, he wrote to the attorney of the defendant, then co-operating with him, as follows: *Page 293 
"It was only last week that I again saw Mr. Holste [director of the defendant] and suggested to him that I had been authorized by Mr. Stein to make a proposition to him, the gist of which was, that if the Holstes would permit us to raise a mortgage of $100,000 that we, in turn, would pay $1,000 per year additional rent on the lease that we now hold. * * * I believe that the above proposition is a worthy one for them to consider as it certainly will not jeopardize their interest in their property, and if anything, gives them additional revenue."
And on the 26th of the month following he again wrote:
"If it is their [defendant] intention to accept our proposition for an additional rental of $1,000 annually in consideration of which they will permit us to raise a mortgage of $100,000, please let me know accordingly."
The letters tell the story. They, as well, bear plenary proof, not only of complainant's duplicity towards the court from which it seeks favors, but also of an unconscionable attempt to overreach the defendant, the usual penalty for which is a denial of relief. "The strict rule is this, that the party who comes into equity for a specific performance must come with perfect propriety of conduct, otherwise he will be left to his remedy at law." King v. Morford, 1 N.J. Eq. 274; Miller v. Chetwood,supra; Clickner v. Clickner, 95 N.J. Eq. 479; Newark Cleaningand Dye Works v. Gross, 102 N.J. Eq. 362; Pfender v. Pfender,104 N.J. Eq. 107; affirmed, 105 N.J. Eq. 247. It was a conscious and bald effort to defraud the defendants of a large sum of money under pressure of artful legal proceeding, and to relax the rigor of the rule, upon the complainant giving security to redeem the mortgage, would not only expose the defendant to a possible repetition but also put upon it the burden of constant vigilance against the cunning of dishonest men.
Complainant's counsel, a highly esteemed member of the bar, is not involved. It does not appear that the letters, even to now, have come to his attention. They were offered in a group with others, by his consent, without inspection. His failure to comment upon them in his brief is assurance that they escaped him. *Page 294 
Near the close of the hearing the defendant moved for leave to file a counter-claim to reform the lease so that it would read, in effect, that the complainant eventually was to pay the debt. Relief by specific performance is granted upon a consideration of all of the equities, and the equities are read into the contract by the decree enforcing it. McCormick v. Stephany, 57 N.J. Eq. 257; Miller v. Chetwood, supra. "The court is bound to see that it really does the complete justice which it aims at and which is the ground of its jurisdiction." King v. Morford,supra. The matter should have been set up in defense, not counter-claim. It was, with other things, set up in the eighth paragraph of the bill by way of anticipating one of the defendant's reasons for refusing to perform and was met by an omnibus denial of all the reasons. This was obviously an inadvertence, for it was the principal issue at the hearing, tried and decided. An amendment will be allowed.
The bill will be dismissed.