The state highway commission, in behalf of the State of New Jersey, seeks decree for specific performance of a contract whereby defendant agreed to convey to the state a four and one-half foot strip along the front of her premises, plus slope rights required for grading the eighty-foot wide state highway, route 33. The consideration to be paid by the state was $275 in cash, plus the elimination of an old concrete retaining wall and the grading, sodding and fertilizing of a bank or terrace along the new abutting front of defendant's premises and the construction of two sets of concrete steps from the sidewalk level up to the level of defendant's lawn (which was several feet higher than the street level).
Defendant, admitting the making of the contract, contests the right of complainant to decree on several grounds; and counter-claims for decree for rescission and cancellation of the contract.
The counter-claim must be denied, not only for the reason that defendant did not give any notice of election to rescind until some six months after the making of the contract, when performance by the state had been practically completed except for the payment of the $275 cash, but also for the reason that the evidence fails to support defendant's contentions and shows no justification for rescission. The evidence shows no inability of defendant to understand the transaction; no inadequacy *Page 158 
of consideration; no threats; no fraud; no misrepresentation; and no concealment or suppression of any information which complainant was under any duty to give.
Neither the state, nor the highway commission, nor the latter's real estate negotiator was under any obligation to inform defendant that she had the right to refuse to sell; that she could require the state to resort to condemnation proceedings; that she might obtain a higher price by the latter course; or anything else of the kind. She was a mature business woman and although it appears that some two months prior to the making of the contract she had had a severe nervous shock, she had returned to the active management and direction of her sanatorium and its various employees sometime before the making of the contract, and was apparently fully able to carry on her business and in full possession and control of all her faculties. She testified that she had the feeling or belief that she had no alternative but to accept the offer made by the highway commission, but she does not say (nor does it in anywise appear), that the commission representative told her so, either expressly or by implication, or that he even knew that she had any such feeling or belief.
The consideration for her contract, while not generous, was not unfair. The loss of the strip did not damage her property (the house was situate some seventy-five feet back from the road) other than by the loss of some six hundred and fifty square feet of land (the fair value of which is found to be $130), and the loss of four trees of varying size, for which damage $145 was figured as fair compensation. Opinions of individuals may well differ as to the desirability, and the value, of the presence of these trees on the lot near the street; the figure of $145 does not appear unfair, from all the evidence — and it was a figure apparently considered fair by both parties at the time of the contract. It also appears from the evidence that the concrete wall was of no value to the property other than as a retaining wall; that defendant preferred the terracing down of the property rather than the construction of a new retaining wall, and did not even desire *Page 159 
the preservation of the concrete blocks of the old wall; and that moreover the old wall was sagging at the top and thereby encroaching on the highway.
From what has been said on the issue as to rescission, it is apparent also that defendant must fail in the contention that the contract is one imposing undue hardship upon her or that it was obtained under circumstances which would lead a court of equity to the conclusion that specific performance should be denied.
Of the other defenses set up by the answer, several merit no serious consideration, to wit, that complainant has an adequate remedy at law; that time was of the essence of the contract; and that complainant was without legal authority to make the contract. The defense that the contract was essentially unilateral and that there existed no mutuality of remedy might also be dismissed summarily, were it not for the fact that the instant case involves the novel factor of the state being the party complainant.
To the general rule that mutuality of equitable remedy is essential to the right to decree for the specific performance of a contract (Freeman v. Anders, 103 N.J. Eq. 430;143 Atl. Rep. 550), there is the thoroughly well-established exception that the filing of bill by the unbound party makes the unilateral contract mutual and enables the other party to enforce it.Richards v. Green, 23 N.J. Eq. 536; Teitleman v. PorterSmith Co., 103 N.J. Eq. 412; 143 Atl. Rep. 721.
Does the present case come within that exception? Has the defendant become enabled to enforce the contract against complainant by reason of the latter's filing of the bill? The real party vendee to the contract and the real party complainant in this suit is the state. Curtis and Hill Gravel and Sand Co.
v. State Highway Commission, 91 N.J. Eq. 421; 111 Atl. Rep. 16.
The state may sue, but cannot be sued, in its own courts without its consent. As is pointed out in the Curtis and Hill Case, the state had not at that time authorized suit against the state highway commission. No subsequent enabling legislation is known to the court, and counsel on both sides agree that none is known to them. Defendant *Page 160 
therefore could not have filed bill for specific performance. The state may sue, however, and in this case has sued and submitted itself to the jurisdiction of this court. One important difference from the ordinary suit, however, exists: in the ordinary case the defendant can enforce, by the process of this court, the performance by complainant of the decree for mutual specific performance. How can that be done in the present case? And if it cannot be done, can it be said that there is mutuality of remedy, and that complainant is entitled to maintain its suit?
No way is known by which defendant could compel complainant to perform the decree. Nevertheless it is concluded that complainant should not be precluded from the decree it seeks — for several reasons.
In the first place, as a matter of public policy, the state should be, and is, a favored suitor in civil suits in its own courts. Costs may be recovered by the state, but will not be awarded against it. The statute of limitations does not run against the state; it may not be sued without its consent; and numerous other incidents exemplifying this principle exist. On this broad principle — and on analogy to its right to sue though immune from suit, it is deemed that it must have the right to specific enforcement of a contract notwithstanding such contract cannot be specifically enforced against it without its consent. Such a rule finds equal justification whether from contemplation of the state as the sovereign, or from consideration of the fact that the interests of the state are the interests of the whole public. A contrary finding would deprive the state — the public — of any right in any case to a decree of specific performance.
Moreover it needs must be presumed that enforcement against the state will not be needed; that the state, which is administering equity through its courts, will itself do equity by and through its other branches, in accordance with the decree of the court whose aid it has itself invoked, and to whose jurisdiction it has submitted itself.
Again there is the factor in the present case of substantial performance having been made by complainant, which makes *Page 161 
applicable the further principle that in such cases this court will use every effort to enforce complete performance and will disregard defenses which might otherwise be effectively available to defendant. Journal Plaza Holding Co. v. J.L.H. Co.,105 N.J. Eq. 290; 147 Atl. Rep. 581.
It may also be borne in mind that the court has the power to impose conditions upon the right to relief.
It is deemed therefore that complainant is entitled to decree; but it is also concluded that under all the circumstances of the case that decree should be conditioned.
The contract specifically provides that the terraces shall be constructed on a slope of two to one. In fact they have been constructed (probably by inadvertence, since the difference in cost is negligible), on a slope of one and a half to one. It does not appear that defendant agreed to such a change or in any otherwise is estopped from being entitled to performance of the contract as agreed to in this behalf. It is common knowledge that the steeper slope is not as satisfactory; it is more difficult to mow; the sod is more apt to burn out in summer because of the lesser ability to receive and retain moisture; and obviously ascent and descent is more difficult. The difference in slope also extends to the two sets of concrete steps.
Complainant has tendered payment into court of the cash consideration named in the contract. If it shall in addition to this sum pay into court the reasonable cost of changing the terraces and steps to the required slope, within ten days from the date of ascertainment of such cost, decree of specific performance will be advised. If the parties cannot agree on the sum, a reference to a master will be made. *Page 162