## ROBERT A. ROBERTSON v. HEZEKIAH S. MILLER.

*A final decree will not be opened, on the application of the defendant, five and a half years after the decree was made, and four and a half years after it came to the knowledge of the defendant, upon the ground of the pecuniary inability of the defendant to make the application at an earlier day.

Applications to open decrees address themselves to the sound discretion of the court. They should be listened to, generally, with great caution, and should not be granted when the result must be injurious to the complainant.

THIS cause came on for hearing at April term, eighteen hundred and thirty-six, upon a petition on the part of the defendant to open a final decree made at July term, eighteen hundred and thirty, in favor of the complainant, upon a bill filed by him for an account and dissolution of partnership.

*W. Halsted*, for petitioner.

*W. Pennington*, contra.

THE CHANCELLOR. The complainant filed his bill in September, eighteen hundred and twenty-nine, against the defendant, for an account, and a dissolution of partnership. The pro-

---

* See 2 *Smith's Chan. Prac.* 25; *Millspaugh* v. *M'Bride*, 7 *Paige*, 509; *Tripp* v. *Vincent*, 8 *Paige*, 180; *Parker* v. *Grant*, 1 *John. Chan. R.* 630.

[Robertson v. Miller.]

cess was returnable to October term of the same year, and was served by leaving a copy with the defendant's wife at his dwelling-house, he being absent from the state on business. At the term of April, then next, the bill was ordered to be taken pro confesso; and it was referred to a master to examine into and report the true state of the partnership accounts and transactions, and the amount due the complainant, if any thing. The master made his report, which was confirmed, and a final decree was made in July, eighteen hundred and thirty.

The defendant now applies, by petition, to have the decree opened; and to file an answer to the bill, and to have the cause re-heard on the merits. The grounds on which the application rests are these:—That in August, eighteen hundred and twenty-nine, he left this state, and went upon business to Middle Florida; and that he was detained by necessary business until August, eighteen hundred and thirty-one. In the interim, his family had removed to New-York, and he had no knowledge of the suit until he returned to New-York in August, eighteen hundred and thirty-one. He was then, by reason of misfortunes, so poor as to be unable to defray the expense of an application to have the decree opened or set aside, and was obliged to take the benefit of the insolvent laws of New-York. After this, he removed to Philadelphia, and was unfortunate there also until very recently; and would have made an earlier application to set aside the decree, but for his embarrassments and pecuniary misfortunes. The petition states that the complainant was actually indebted to the defendant, at the date of the master's report, in the sum of two thousand nine hundred and seventy-four dollars.

This is an unusual application, and of some importance in point of practice. The defendant seeks to open a final decree after a lapse of five and a half years from the time it was made, and four and a half years after the fact of the decree came to his personal knowledge, upon the ground of pecuniary inability. Applications of this character address themselves to the sound discretion of the court, arising out of the circumstances of each case as it is presented. No general rule can be found which will

apply to all. They should be listened to, generally, with great caution, and ought not to be granted where the result must be injurious to the complainant, who has conformed himself to the law of the court.

In *Wooster* v. *Woodhull*, 1 *John. Chan. R.* 539, the court was inclined to grant a similar application, upon the authority of some English cases, and was only prevented from doing it in consequence of the death of a material witness of the complainant, the want of whose testimony would have produced irretrievable injury to him. But it appears to me, on inspecting those cases, that they are not in point. In *Robson* v. *Cranwell, Dick.* 61; *Kemp* v. *Squier, Dick.* 131; 1 *Ves. sen.* 205; *Terran* v. *Waite, Dick.* 782, the bills were dismissed for default of appearance by the complainant; and upon his application, without unnecessary delay, were restored upon payment of the costs. In *Fry* v. *Prosser, Dick.* 298, the defendants made default at the hearing and suffered the decree to be made absolute, and proceedings to be had before the master. The master of the rolls ordered the cause re-heard, on payment of costs, if the decree should be varied so as to render the proceedings before the master useless. From the very brief note of this case given by the reporter, it would seem that the proceedings were not finally closed; there does not appear to have been any enrollment. *Cunningham* v. *Cunningham, Amb.* 89, is cited in the last mentioned case as an authority; and a reference to it will show that it has but little application to the point now under consideration. It was an application for a rehearing, two years after decree *nisi* made absolute against the defendant, and was granted by lord Hardwicke after great difficulty.

But there is a clear distinction between a decree nisi for default, according to the English practice, and a final decree after an order that the bill be taken pro confesso and reference to a master to take an account, according to our practice. The one is considered the decree of the party, the other the decree of the court: *Carew* v. *Johnson*, 2 *Sch. and Lef.* 300. Applications to open the one are treated with indulgence by the court, for ob-

vious reasons, and are generally opened on the usual terms. Attempts to set aside the other are more strictly scrutinized.

The other authority referred to by the court, in 1 *John. Rep.* (above cited,) was *Williams* v. *Thompson*, 2 *Bro. C. C.* 279 ; but in that case there was really no decree. The motion was made to set aside the order taking the bill pro confesso, and was made before any decree was taken. There is a great difference between opening an order to take the bill pro confesso, and opening a decree pronounced upon it subsequently : 1 *Hoff. Prac.* 551. Such decrees are placed on the same footing as other decrees regularly made, and are not disturbed except under special circumstances. In *Knight* v. *Young*, 2 *V. and B.* 184, there was an application to get rid of such a decree, and that the party should be let in to answer ; and lord Eldon said, the court has never done that without a strong ground, being very tender of opening a decree of this sort, which is a mode of obtaining a judgment of the court prescribed by the legislature ; not a decree nisi, such as the plaintiff, upon the defendant's default, chooses to stand by. The application was refused, though based upon an affidavit that the decree pro confesso was not the consequence of wilful default, but of imbecility of mind. And in *Herne* v. *Ogilvie*, 11 *Ves.* 77, the court, before opening an order to take the bill pro confesso, went so far as to require that the answer proposed to be filed should be exhibited, that it might be satisfied of its materiality.

The whole current of authorities goes to show, that there is a difference between decrees by default, orders that the bill be taken pro confesso, and actual decrees pro confesso. The last is considered, when compared with the others, as sacred, and to be disturbed only for weighty reasons. And even chancellor Kent, in the later opinion of *Lansing* v. *McPherson and al.*, 3 *John. Chan. R.* 424, appears to have entertained the same opinion. There the decree pro confesso was sought to be set aside six months after it was obtained, on the ground of misapprehension, and that the defendant had a good and substantial defence ; and the court held that the delay had been too long,

[Robertson v. Miller.]

without a very special case made ; referring to the case of *Knight* v. *Young*, 2 *Ves. and B.*, above cited.

In this suit, the final decree was made in July, eighteen hundred and thirty. In August, eighteen hundred and thirty-one, the defendant was apprised of the decree. At the end of four and a half years he makes application to open it, and to be permitted to answer. The only reason assigned in the petition for this extraordinary delay, is pecuniary inability. This is a dangerous ground to stand on ; and I greatly fear to make a precedent which may be followed so easily, and bring the court into great perplexity. I am not aware that it is considered in law an excuse for default in legal proceedings in any case. If a party be poor, in the legal sense of the term, the law provides for the enforcement or protection of his rights without charge ; and if he will not avail himself of this privilege, he must be considered as able to take care of himself, without assistance. In the absence of authority, and against all precedent, I cannot take it upon me to disturb the decree on this ground.

In an affidavit of Miller, taken on the eighteenth of May last, which was read at the hearing without objection, the petitioner sets up another excuse. He says, that after he had removed to Philadelphia, in February, eighteen hundred and thirty-two, he called on Robertson for the purpose of procuring some settlement and adjustment of the accounts between them. Robertson said he could not settle them, because he had not the books, but he would get his books and arrange his accounts in a few weeks, and would write to him when he was ready ; but he did not write, nor did he ever afterwards signify any willingness to have the accounts adjusted on fair terms.

I am not satisfied that this statement makes any thing in favor of the application. The conversation was four years before any proceedings were had in this court to open the decree. The very fact that the complainant did not write in a few weeks, as he promised, should have satisfied the defendant, that he did not mean to make the settlement according to his desire, and should have induced measures for relief. If the complainant had con-

tinued to delay him by specious and deceptive promises, a more plausible case might have been presented; but the defendant himself explicitly says, that he never afterwards signified any willingness to make a settlement. I cannot consider the petitioner entitled to relief on this ground.

There is a fact stated by Robertson, in his affidavit, which is of some importance in settling the proper course to be pursued in this case. It is, that the books from which the account is principally stated, and which were left with the master, are lost, or that they cannot now be found, and that without the books he cannot exhibit or prove his account. Some exception was taken to this affidavit, as not being sufficiently explicit. It might be more full and satisfactory. But there is no reason to believe or suspect, that it was intended to impose on the court; and taking it to be honest, it presents a serious obstacle to granting the prayer of the petitioner. For it is evident, that if the indulgence asked for is granted, it must be at the expense of the complainant. His claim must be jeoparded, and probably a great portion of it lost, and this by the negligence or wilful omission of the defendant. This would clearly be wrong; and although I regret that the party is now shut out from what he considers a just defence, I am satisfied that a regard to the uniform administration of justice, and the security of suitors in this court, requires that the prayer of the petition should be denied.