The Chancellor.
By an act passed the sixteenth of February, eighteen hundred and sixteen, the New Barbadoes Toll Bridge Company, ” the complainants in this cause, was intorporated for the purpose of constructing a road from the east end of the Aequacknock bridge in the county of Bergen, to the Hackensack and Hoboken turnpike-road, and to build bridges tcross Berry’s creek and the Hackensack river. Three persons were appointed commissioners to lay out the road, and before ;hey determined on the route, as is very common, the owners of *159 property in the neighborhood through which it was to run, evinced a solicitude that it should pass over their lands. This state of things created the question between the upper and lower route. Pending the action of the commissioners, those interested in the upper route, the place where the road was finally located, obtained an agreement from a number of the land owners, agreeing to give their lands for the road. This agreement bears date the twenty-first of July, eighteen hundred and sixteen, and is signed and sealed by twenty persons. By this agreement, the persons executing it, covenant and agree severally with the president and directors of the New Barbadoes Toll Bridge Company, that if the commissioners named in the aforesaid act, lay out the said road in a certain direction and manner, which is particularly stated, that they will respectively grant to them whatever portion of their respective lands the road shall occupy, and will execute good and sufficient deeds for the same. The route named in this agreement was adopted, and the road built accordingly. One of the persons who signed this agreement, was Enoch Gr. Vreeland, the father of the present defendant, who then owned a farm on the contemplated line of the road. This farm was conveyed by the father, subsequently, to his son, who is the defendant, as an advancement, and the present bill is filed against the son for a specific performance of the contract, so entered into by his father.
There is no doubt, as well from the answer of the defendant himself, as from the whole evidence, that he received the conveyance from his father, with full knowledge of this agreement; in fact, the subscribing witness thinks he was present when it was signed. It would seem that the old man was not favorable himself to the road, and objected to signing the paper, but the son, who it was then supposed would succeed to the farm, was favorable to it.
The defendant, therefore, can stand in no better situation than his father, for it is well settled, that a specific performance of a contract will be decreed against a subsequent purchaser, *160 having knowledge of the complainant’s equitable title: 5 John Chan. R. 231.
Upon the case, as it thus presents itself, it wonld seem that die defendant should perform this contract, and especially so, as-it is of a character requiring the land for the purposes of the road, and damages at law might be a very inadequate relief, unless-there be very substantial reasons urged against it. A court oi equity will look at the necessity that exists on the part of the-complainants to have the possession of the land itself, in coming to a conclusion in the case. Here it is most manifest the enjoyment of the land is indispensible, and without it the whole road may be defeated.
The first objection raised by the defendant, is, that the agreement as proved, is not the same as the one set out in the bill-The bill sets out an agreement between Enoch G-. Vreeland and' the complainants, whereas the oue produced appears to have been made between the complainants and some twenty landholders. I do not think this a valid objection, for it is a several' contract on the part of the different landholders with the company, and is so especially stated to be, although for greater convenience it is put into one writing. They severally bind themselves to convey their respective lands, and there is no-necessary dependence on each other.
The second objection deserves more consideration. It is the lapse of time since the agreement was entered into, before the defendant was called upon for his deed. The agreement was-signed in July, eighteen hundred and sixteen, and the deed, it would seem from the evidence, was not demanded until July,. eighteen hundred and thirty-nine, a period of twenty-three years. Mere lapse oftime, is not held from the examination of the cases, to constitute a bar to relief, but may be explained. ■ The court-will look to it that no experiment is practised on the part of the complainant, however, as by waiting to see whether it is to his advantage to have the agreement carried into effect or not,before he seeks relief, and if the delay under the circumstances amounts to an abandonment of the contract, relief will be denied: 1 Ve *161 sey and Beam, 23; 12 Vesey, 326; 13 Vesey, 225; 9 John. R. 450; 1 Saxton, 279.
In the present case, the road was laid ont and the land taken possession of by the company, at or about the time the contract was entered into, the fences were changed and the complainants have ever since occupied and enjoyed the land. There has been no change in the circumstances of the parties, and no intention to abandon on the part of the complainants can be presumed, but a mere neglect to call for a deed, from a belief that it was sufficient to rest upon the contract. None of the parties to the agreement have ever conveyed, and the present suit, it is alleged, has grown out of one at law, in which the defend ant pleaded title to the land over which the road is laid. It is, indeed, stated by the defendant, that the alleged trespass for which a suit was instituted against him at law, and in which he pleaded title, was for taking gravel on his own land, adjoining to, but no part of the road. This may all be true in point of fact, and yet the trespass complained of, as set out in the demand, was upon the turnpike road. With this explanation, and with the belief that many public roads have been constructed upon the faith of agreements alone, without considering it necessary to procure a deed for the lands, I am not willing to deny the relief now sought on this ground.
A third objection made, is, that good faith was not practiced by the company in constructing this road. The road was to be four rods wide, and as each of the landholders gave two rods, they believed, and particularly Mr. Yreeland, that the bed of the road would have been in the centre, whereas, adjoining his land, it has been worked on his side, and so as to injure the fences. There can be no doubt Mr. Yreeland so thought, and that he has declared he never would have signed the agreement had he supposed otherwise. The sixth section of the charter requires that the road should be built in the centre. The witnesses explain this part of the case, by showing that the state of the ground was such as to call for making the road as they did. The company was poor and had to consult economy as much as possible, and *162 they made it as they did, to avoid increased expense. This re meves the idea of any designed oppression or wrong towards Mr Yreeland, though they were still bound to have met the expense and abided by the terms of the law. The agreement, however, does not place the consideration for the grant of the land upon the mode in which the road should be constructed, but distinctly upon the ground that the commissioners lay out the road by a certain route. As the party agreed to give his land for the road, and must, therefore, lose all further advantage from it, it does not strike me as any sufficient reason for not doing so, that in the construction of it they should have gone a little nearer to his side than was contemplated, and especially if it became necessary, as matter of convenience, to do so.
The deed tendered to the defendant is objected to. It appears to have been an ordinary conveyance, without covenants, of the land covered by the road, and it is within the terms of the agreement. The agreement was, to grant the lands and to execute good and sufficient deeds for the same. The parties could have contemplated nothing short of a conveyance in fee, and not merely for the time the charter had to run.
The foundation of this suit, it is alleged, is to be traced to some personal difficulties between the defendant and a chief stockholder and manager of this company; and it is denied that any authority was ever given by the board of directors, to institute it. It would be quite impossible for me to enter into the motive which prompted this proceeding; I can only settle the rights of the parties as they are presented. The treasurer swears that there was a vote of the board of directors, requiring the title to be procured for the lands under the agreement, and this suit was instituted under the belief that a single action was sufficient to test the right.
I am of opinion, that no sufficient reason is assigned against the decree asked for in this case, and that the complainants are entitled to a specific performance of this contract from the defendant. This decree must, however, be without costs : while the complainants should have the land for the purposes of their road, *163 I still think, in view of all the circumstances in the ease, and especially the lapse of time before they demanded it, they should not have costs.
Cited in Lawrence v. Lawrence, 6 C. E; Gr. 321; Lounsberry v. Locander, 10 C. E. Gr. 557.