JOSEPH E. TYNAN

*v.*

RICHARD WARREN et ux.

1. The rule that a court of equity will enforce a trust, created by parol, in a suit brought for that purpose, where the answer to the bill alleging the trust, admits the same, but does not claim the benefit of the statute of frauds, will be applied, although the answer is in no way signed by the defendant.

2. A, holding the legal title to a tract of land, but, as to a moiety thereof, in trust for B, cannot acquire B's equitable interest therein through a parol agreement that B would relinquish the same on A's paying certain claims against both.

3. The rule that laches in bringing suit will deprive one of his remedy is not applied, unless such neglect has so prejudiced the other party, by loss of testimony, or means of proof, or changed relations, that it would be unjust to now permit him to enforce his rights.

On bill, answer, replication and proofs.

*Mr. George S. Hilton,* for the complainant.

*Mr. Michael Dunn,* for the defendants.

GREEN, V. C.

This bill is to establish a trust.

The complainant Tynan and defendant Warren were sureties on an administrator's bond, dated February 8th, 1876, in the penalty of $16,000, filed in the Passaic county surrogate's office.

On a rumor that the administrators were mismanaging the estate, one of them, on May 6th, 1876, assigned to Tynan and Warren as indemnity in respect of their liability, all his interest in a mortgage of $7,000, on property in Paterson, which mortgage, at the time of such assignment, was held by the Passaic County Savings Bank as collateral for a note for $5,000, on which there was $3,400 due.

The mortgage was afterwards foreclosed by the savings bank and the property sold by the sheriff to Tynan and Warren on their bid of $3,400. The costs, interest and fees were paid by Tynan and Warren, each advancing one-half thereof. They then agreed to raise $3,500 by mortgage on the property, to pay the debt of the savings bank and other expenses.

The bill alleges that then it was agreed between Tynan and Warren that the deed should be made by the sheriff to Warren; that Warren should execute a new bond and mortgage for such loan, pay the amount due the savings bank out of the loan, and apply the remainder thereof to the payment of other claims, including past-due taxes, expenses &c., "and to hold the premises for the joint and equal benefit of himself and complainant, until the reason for the arrangement stated should cease to exist."

The answer of defendant admits that the property was sold by the sheriff to Tynan and Warren; that each advanced one-half of the amount paid on the sale; that it was arranged between complainant and defendant that they should procure a loan of $3,500 from the Paterson Savings Institution on the property to pay the balance of the purchase-money and other expenses; that the deed was made out in defendant's name at the suggestion of the complainant, and that it was agreed that he, the defendant,

"should hold the title to said land in trust for the equal benefit of himself and the complainant, subject to the said mortgage for $3,500, * * * until a purchaser could be found for it."

The defendant thus does not deny the allegation of the bill that the title was put in his name, to be held by him in trust for himself and complainant, but expressly admits that he did agree to take the title and hold the same in trust, for the equal benefit

of himself and complainant, until a purchaser could be found for it.

This is an express trust. It is not one raised by law from the circumstances of the case, but created, and its terms and conditions fixed, by the express agreement of the parties. *1 Perry Trusts* § *73.* It was not necessary that it be created by writing (*Jamison* v. *Miller, 12 C. E. Gr. 586*), but resting in parol, the complainant, under the statute of frauds, could not enforce it by suit if properly contested, and this is all that is meant by the quotation from *Baldwin* v. *Campfield, 4 Halst. Ch. 891* (at *p. 292*), "an express trust must be in writing." If a trust has been created by and rests in parol, and the defendant either does not answer (*Smith* v. *Howell, 3 Stock. 349*), or if, by his answer, denies the trust, it cannot be enforced against him, for it cannot be legally proved (*Walker* v. *Hill, 6 C. E. Gr. 191, affirmed 7 C. E. Gr. 513; Wakeman* v. *Dodd, 12 C. E. Gr. 564*); or, if he admits the creation of the trust, he may successfully invoke the protection of the statute. This was at one time doubted, but is now indisputably established. *Van Dyne* v. *Vreeland, 3 Stock. 370; S. C., 1 Beas. 143; Dean* v. *Dean, 1 Stock. 425; Ashmore* v. *Evans, 3 Stock. 151; 1 Perry Trusts* § *85.* On the other hand, the rule that if the defendant, by his answer, admits the alleged trust and does not claim the benefit of the statute, equity will enforce the trust, if continuing (*Flagg* v. *Mann, 2 Sumn. 486*), is recognized as long ago as *Hampton* v. *Spencer, 2 Vern. 288; Nab* v. *Nab, 10 Mod. 404; Ryall* v. *Ryall, 1 Atk. 59; Cottington* v. *Fletcher, 2 Atk. 155.*

When this last rule originated, the answer of the defendant was taken under oath, and was required to be signed by the defendant. This latter requirement was so often disregarded that Lord Hardwicke (April 27th, 1748) promulgated a rule of court, making it obligatory. *2 Atk. 290; Hind. Pr. 199; Dan. Ch. Pr. 745.*

The practice of the defendant signing the answer has not obtained in this state, the signature of counsel only being required (*Dickerson* v. *Hodges, 16 Stew. Eq. 45*), but the signature of the defendant was, of course, subscribed to the affidavit, and in this

way became part of the answer when it was verified.. The fact that bills now generally waive answer under oath, results in the answers being rarely signed in any way by the defendant, and the answer filed in this suit is not in any place signed by the defendant.

Does this fact take the case out of the rule stated, that where the bill charges a trust, and the answer admits it, it will be enforced, if subsisting, unless the defendant claims the benefit of the statute? The solution of this question must depend largely on the reason of the rule.

In ascertaining this reason we may obtain much light from cases brought for the specific performance of parol agreements for the sale of lands, of which there are very many (see *Pom. Spec. Perf.* § *140 note 5*), for the terms of the statute of frauds with reference to trusts and agreements for the sale of lands, are, so far as the requirement of a writing signed by the party is concerned, so similar that the application of the statute and the reasoning with reference thereto, in one case, must undoubtedly apply to the other, a conclusion recognized in *Story Eq. Pl.* § *76*, in *Mitf. Eq. Pl. 267, 268; Dean* v. *Dean, supra; Brown St. F.* § *113.* .Our statute relating to trusts (*Rev. p. 445* § *3*) is an almost exact copy of *29 Car. II. c. 3* §§ *7, 8*, and the fifth section of our act relating to agreements for the sale of lands is taken from section 4 of the English act (*Appendix to Brown St. F.*).

Professor Pomeroy, speaking of the enforcement, by decree of the court, of a contract within the statute of frauds when a verbal contract is alleged by the plaintiff, and the defendant admits it in his answer, without, at the same time, interposing the statute of frauds as a defence in his pleadings (*Pom. Spec. Perf.* § *140*), says:

"Although this rule is firmly established, the cases and text-writers are not agreed, as to the reasons for its. adoption. Three principal ones have been suggested—*First.* It has been said that such an admission by the defendant obviates all the dangers which the statute was intended to prevent; that the object of the legislature was to remove all the opportunity and occasion for· frauds and perjuries which are furnished by mere parol testimony, and the written statements by both the parties in their pleadings, as to the terms of

Tynan v. Warren.

their agreement, leave no possible room for any fraud or perjury. *Secondly.* It has been suggested, and especially by Judge Story, that the answer signed by the defendant, or by his attorney, and admitting the contract as set forth by the plaintiff, technically and literally satisfies the very demands of the statute, since it is a note or memorandum in writing signed by the party to be charged, or by his agent duly authorized. *Thirdly.* It is argued that an admission of the contract, without at the same time setting up its invalidity, or the impossibility of enforcing it resulting from the statute, is a deliberate and formal waiver of all benefit which the defendant might have derived from the legislation—this benefit being personal, and therefore capable of being waived. Both the first and second of these reasons are open to an objection fatal to each of them. If sound, they should apply with equal force to the case where the defendant sets up and relies on the statute after admitting the contract, and to that where he does not set up the statute. If an admission of the agreement obviates the dangers of perjury, or constitutes itself a memorandum, this would be none the less true if defendant should add to such admission a plea of the statute as a defence. The rule cannot be accounted for on either of these grounds; its explanation must be found in the third reason, which alone is consistent with either doctrine."

*Story Eq. Pl.* § *763* states the ground as being that the defendant has, by not claiming the benefit of the statute, thereby renounced its benefit; although in *Story Eq. Jur.* § *755*, he suggests that the answer being signed by the defendant is a compliance with the statute.

Chancellor Vroom, in *Hutchinson* v. *Tindall, 2 Gr. Ch. 357*, in which he refused to follow *Hampton* v. *Spencer, 2 Vern. 288*, in that it executed a trust set up in the answer, although not charged in the bill, says: "I am inclined to believe that, if the present complainant had filed a bill claiming this deed to be a deed of trust, and praying that it might be so decreed according to the original intention of the parties, the answer of the defendant admitting the trust would have been good evidence of it. It would have amounted to a sufficient declaration of the trust."

Chancellor Williamson, while he does say, in *Dean* v. *Dean, 1 Stock. 425* (at *pp. 427, 428*), that the reason why the court will execute a parol trust admitted by the answer, is because it takes the answer as the writing by which the trust, in the language of the statute, "is manifested and proved" (at *p. 429*), says: "It appears to me that the answer contains such an admission of the trust alleged in the bill, that the court can exe-

-cute it without the assistance of parol testimony ; and that, there-fore, the defendants, not having insisted on the statute for their protection, they must be considered as having renounced the benefit of it."

In *Jamison* v. *Miller, supra,* some significance would seem to be attached to the fact that the answer is signed by the defendant.

As the result of authorities cited, *Perry Trusts* § *84* says :

"'In all cases, however, the defendant may answer, and if, in his answer, he confesses the trust without insisting upon a statute of frauds, he will be held to have waived the benefit of the statute, and his answer may be used as a written declaration and proof of the trust, on the ground that the plaintiff is not called upon to introduce evidence, and the trust appears upon the written answer before the court."

*Hill Trust. p. 95 note 1.* If defendant, by answer, admits the parol trust, but does not set up the statute of frauds, he will be seemed to have waived it; so, also, *Tiff. & B. Trusts and Trustees p. 15* and *8 Am. & Eng. Encycl. L. p. 747, tit. " Statute of Frauds."* *2 Reed on Statute of Frauds p. 529* says :

"Not pleading the statute waives it, not because the answer is such a memorandum as the statute requires, but because the latter is waived by not being set up."

In *Whiting* v. *Gould, 2 Wis. 552* (at *p. 594*), Judge Crawford says : " On this subject, from an examination of the authorities, we believe the rule may be stated thus : If a defendant admits an agreement or trust, but insists on the statute of frauds as a defence, the court will not permit his admission to override the positive provision of law, unless the statute is sought to be made a cover for fraud, and will not decree against the defend-ant ; and if, after admitting the agreement or trust, he does not rely, by plea or answer, on the statute, a decree may be rendered against him, because he may be deemed to have renounced the benefit of the statute, and no objection to the nature of the proof can be offered, because the agreement or trust is admitted, and no proof of any kind is required."

The *rationale* of the rule would seem to be this : The statute offers protection to a defendant against a parol trust or agree-

ment for the sale of land, by providing a rule of evidence which prevents its proof, if he denies the alleged trust or agreement, or if, admitting the one or the other, he claims the benefit of the statute; if, however, he admits the trust or agreement, but does not vouch the statute, no rule of evidence is brought into operation, as there is no issue on that point to be tried, and the benefit of the statute is waived. In such case, the court proceeds to ·enforce the trust or agreement if it can establish the one or the other from the admissions made by the answer ·without resort to parol proof to ascertain its terms and conditions.

In this point of view, the fact that the answer is in no way ·signed by the defendant, does not prevent the application of the rule, and the defendant, having by his answer admitted the trust, and set out its terms, conditions and limitations, and not having ·claimed the benefit of the statute, the same being an express trust with reference to the land, must be held to its terms and conditions, unless he has been in some way effectively relieved from the obligation of the trust.

The defendant claims by his answer that the trust is no longer subsisting because the complainant relinquished his interest in the property in consideration of the defendant's assumption of certain claims. These allegations of the answer are put in issue by a general replication, and the parties as witnesses tell different stories. It is, however, admitted that the agreement, whatever it was, was a verbal one—could it, if it was even as stated in the answer, have the effect defendant claims for it? It being admitted that the defendant took the title to the whole property ·on an agreement to hold it for the joint benefit of himself and complainant, he was the legal owner, subject, as to an undivided half, to a trust in favor of the complainant. As to this half, then, there was a legal estate in the defendant and an equitable estate in the complainant. The latter might not be able to enforce it, ·as has been shown, and this was probably what Mr. Williams meant by saying no papers were necessary. But defendant could not acquire complainant's equitable interest, as he claims to have ·done by his answer, through a parol agreement. This would be a transfer of a trust estate, and section 4 of the statute of frauds provides that

"all grants and assignments of any trust or confidence shall be in writing signed by the party granting or assigning the same, or by his or her last will in writing, or else shall be utterly void and of no effect."

This is substantially section 9 of the English act. Chief-Justice Marshall, in *Hughes* v. *Moore, 7 Cr. 176* (at *p. 191*), says : " The court can perceive no distinction between the sale of land to which a man has only an equitable title, and a sale of land to which he has a legal title. They are equally within the statute."

In *Darling* v. *Butler, 45 Fed. Rep. 332*, plaintiff had executed and delivered to defendant a deed of certain land, but it was intended by both parties that the deed should not take effect until the defendant made a sale of the land for the plaintiff, it was held the legal title passed, but the equitable title still remained in the plaintiff and a subsequent oral sale thereof to the defendant was within the statute of frauds and void, and in an action for the balance of the purchase-money a demurrer to the complaint was properly sustained. Mr. Justice Wallace (at *p. 335*) says : " Nevertheless, the equitable interest could not be transferred by parol ; and without a new deed, or a formal assignment or release of the plaintiff's equitable title, the plaintiff could acquire no better title to the lands than he had before (viz., the legal title subject to the others' equitable title). An oral agreement for the transfer of an equitable interest in lands is as inoperative under the statute of frauds as one for the transfer of a legal title." *Dougherty* v. *Catlett, 129 Ill. 431; Clitus* v. *Langford (Tex.), 24 S. W. Rep. 325; Richards* v. *Richards, 9 Gray 313; Smith* v. *Burnham, 3 Sumn. 435; West* v. *Randall, 2 Mas. 203.*

It is unnecessary, therefore, to ascertain which version of this parol agreement is correct, as it, whatever it was, was inoperative to transfer complainant's equitable title to defendant.

The defendant next claims that complainant has forfeited any rights he may have had in equity by his delay in prosecuting the same. Mr. Justice Story, in *Oliver* v. *Platt, 3 How. 333*, thus expresses a well-established rule : " The mere lapse of time constitutes of itself no bar to the enforcement of a subsisting trust," which, of course, refers to express trusts.

Tynan *v.* Warren.

This trust was recognized as an active subsisting one at the time of the alleged agreement at Mr. Williams' office. If the acts of the defendant since that time amounted to a renunciation of the trust, the rule that this court acts by analogy to the statute of limitations, does not apply because the statutory period has not elapsed, it being only twelve years prior to the filing of the bill.

This defence, if available, must come under the rule either of acquiescence or laches. I do not see how the first applies. The distinction between the two is pointed out in *Hall* v. *Otterson, 7 Dick. Ch. Rep. 522.* The complainant does not now object to the acts of defendant in which he has acquiesced; he does not challenge his collecting the rents or placing a mortgage on the property. The rule as to laches is well defined and is clearly stated in *Van Houten* v. *Van Winkle, 1 Dick. Ch. Rep. 384,* and in *McCartin* v. *Traphagen, 16 Stew. Eq. 323,* and in the citations in *Hall* v. *Otterson, supra.*

I do not understand that mere delay in bringing a suit will deprive a party of his remedy, unless such neglect has so prejudiced the other party by loss of testimony or means of proof, or changed relations that it would be unjust to now permit him to exercise his right.

Applying this test, how has the defendant been injured by delay? There is no substantial dispute as to the terms of the trust. Some witnesses are dead, but if alive, their testimony could only relate to the oral agreement as to the relinquishment of the equitable interest, which would be of no benefit. Defendant has collected the rents and paid the expenses, and there is nothing to prevent his accounting—he still holds the title, so that the trust can be executed, and if he had sold the property, he presumably would have the price or what represented it. Of course, the interests of the mortgagee cannot be affected. I see no reason why, under the authorities, the doctrine of laches should be applied.

I will advise a decree for complainant in accordance with the prayer of the bill.