STEINHARDT BROTHERS & COMPANY

*v.*

SOPHIA COHEN et al.

[Decided August 14th, 1916.]

On a bill by the assignee of a second mortgage to foreclose, claiming that it was a first mortgage lien superior to mortgage of one who had loaned the mortgagor the money to pay off a first mortgage, and who claimed under an agreement between complainant and himself, subordinating complainant's mortgage to the first mortgage, and also as an assignee of the first mortgage, where such mortgagee and assignee claimed that, though made a party defendant, he had never had any process served upon him, or any notice until the final decree of foreclosure and the advertisement of the property for sale, the final decree will be opened and his executors permitted to file a cross-bill.

*Messrs. Hudspeth & Rysdyk,* for the complainant.

*Messrs. Gross & Gross,* for the defendants.

LEWIS, V. C.

The rule to show cause in this case should be made absolute. The rule directed to the complainant was to show cause why a final decree taken in the above-entitled case should not be opened and the executors permitted to file a cross-bill. It was

urged by the solicitors for the complainant that the relief prayed for be refused, inasmuch as the executors had not applied for the opening of the decree within the time allowed for an appeal. For a full understanding of the matter, the following facts in the case are set forth:

On September 10th, 1906, Sophia Cohen and Morris Cohen, her husband, mortgaged premises known as lot seventy-two (72), in block seventeen (17), on map entitled "Map of Claremont, Bergen Heights, New Jersey," to one Mary Jane Moriarty, which said mortgage became due on September 10th, 1908, but time for payment thereof was extended to July 26th, 1909.

One William Strasser held a second mortgage on the same premises in the sum of one thousand dollars ($1,000), payable September 10th, 1908, but subsequently assigned same to the above-named complainant, which assignment bears date the 27th day of April, 1907. There is due on said mortgage the sum of five hundred and fifty dollars ($550).

On July 27th, 1909, payment of the first mortgage held by Mary J. Moriarty was demanded, and one Dudley D. Flemming was asked by Sophia Cohen to loan her said sum of twenty-five hundred dollars ($2,500), in order that she might pay over the said mortgage of Mary Jane Moriarty.

Said Flemming refused to do so unless the loan was secured by first mortgage on the above-described premises, and thereupon an agreement was entered into between Steinhardt Brothers & Company, the above-named complainant, and said Flemming, subordinating the mortgage of Steinhardt Brothers & Company to the mortgage made by Sophia Cohen on July 26th, 1912, and recorded July 27th, 1912, in the office of the register of Hudson county, in book 677 of mortgages, pages 72, &c.

On August 6th, 1909, in order to more fully secure the said Dudley D. Flemming, an assignment of the mortgage held by Mary Jane Moriarty was taken.

On October 7th, 1913, Steinhardt Brothers & Company, the above-named complainant, filed a bill of complaint to foreclose their mortgage, claiming that the same was a first mortgage lien and charge against the premises in question and superior in lien and charge to the bond and mortgage of Dudley D. Flemming.

Said Dudley D. Flemming was made a party defendant but claims that he never had any process of subpœna served upon him and that he never had any notice of said suit until the said property was advertised for sale.

On December 12th, 1913, a final decree advising the amount of five hundred and ninety-one dollars and ninety-nine cents ($591.99) on principal and interest with taxed costs amounting to eighty-five dollars and eighty-two cents ($85.82). On January 29th, 1914, the said premises were advertised for sale. It is claimed that this was the first notice which Flemming received of the foregoing proceedings, and he immediately informed Isaac Gross, a member of the firm of Gross & Gross, solicitors of Steinhardt Brothers & Company, that he had a subordination agreement made by Steinhardt Brothers & Company as aforesaid.

In the month of March, 1914, the said Flemming called upon his solicitor and submitted to him the correspondence which he had had with Messrs. Gross & Gross, referring to' the foreclosure of the mortgage and informed him that the first notice he ever had of the foreclosure was the letter which he received from Messrs. Gross & Gross, stating that the premises were to be sold. Robert S. Hudspeth, Flemming's solicitor, thereupon saw Mr. Isaac Gross, of the firm of Gross & Gross, and told him that Flemming had never been served and also showed to him a copy of the subordination agreement made by the said Steinhardt Brothers & Company. Said Isaac Gross replied that he would see his client, and in the meantime it was agreed that the said Isaac Gross might collect the rents of the said property to pay the taxes and preserve the interest of his clients and to recover the expenses incurred by his clients provided this could be done without' prejudice to the rights of Flemming or his mortgage. It was agreed in the meantime, pending the settlement, that no proceedings were to be taken under the final decree, and the sale of the said premises was adjourned from time to time.

On April 10th, 1914, said Flemming died and David R. Daley and Isaac Edge qualified as his executors. Said Isaac Gross continued to collect the rents in accordance with the under-

standing between him and Flemming's solicitor and was still collecting rents in November, 1915, when the executors of Flemming applied for a bill of revivor, for the purpose of opening the final decree entered in the above-entitled cause. An order was made permitting the executors to open the final decree.

In the affidavit before me, Isaac Gross, Esq., solicitor of the defendants, admits the statement of Robert S. Hudspeth, Esq., as to his call after the entry of the final decree. He says, however, that he did not express surprise as to the subordination agreement, for he had already been shown a copy of it by Mr. William A. Lewis. He further said that he informed Mr. Hudspeth that the matter had already been held up so long that his clients had decided to stand upon their decree and that Flemming was not entitled to any consideration, because of his negligence and laches. When informed by Mr. Hudspeth at the interview that Mr. Flemming claimed not to have been served with process, Gross told him, he says, he would investigate the matter. This he did thereafter, making inquiry of the deputy sheriff who made the service in the case, as to whether or not service was effected and in what manner. He was informed that the process of subpœna with ticket annexed had been served personally upon Flemming, and says that he himself examined the return to the subpœna and ascertained therefrom that personal service of the subpœna with ticket annexed was made upon the said Flemming.

Gross denies any arrangement or agreement of any kind or character between himself and Hudspeth, whereby he was to be permitted to collect the rents of the mortgaged property.

It was contended by the solicitor of the complainant that the case of *Sparks* v. *Fortescue, 75 N. J. Eq. 586,* was dispositive herein. The situation presented in that case differs materially from that in the one under consideration. In the *Fortescue Case* there was no charge of imposition. The case was litigated and the decree was not *ex parte.* In the case at bar, the party seeking to open the decree never had a right of appeal, and, furthermore, claims never to have been served with process. In *Jones* v. *Jones, 82 N. J. Eq. 558,* this court considered the rule

laid down in the case of *Sparks* v. *Fortescue* and decided that it did not apply to cases which were heard *ex parte,* because a defaulting party cannot appeal.

It would be highly inequitable and would work a grave injustice, in view of the facts presented on this application, to deny the motion made on behalf of the defendants. A review of them must convince anyone that the complainant had full knowledge of the situation and that the attempt now to defeat the defendants' rights should not be permitted. The court of equity will always grant a rehearing where fraud or injustice has been done. *Easton* v. *New York Railway Co., 30 N. J. Eq. 236.*

Let the decree be opened and the defendants permitted to file a cross-bill.