Complainant heretofore petitioned this court for leave to file a bill of review for the purpose of obtaining a correction or reversal of two final decrees heretofore entered in two partition proceedings. Leave was granted, the bill filed and the matter has been heard on final hearing.
The facts disclosed by the evidence and the files of the two partition suits aforesaid disclose that one William F. Garrison died in the year 1904, testate, and seized of one thousand acres of land and upwards, in Cape May county, New Jersey. This land consisted of various tracts and parcels of land, purchased at various times and scattered, as to some of it, in various sections. Some of the land was under cultivation, some timber, some marsh and bog land. The exact boundaries of the tract, I think, were not ascertainable without the benefit of a survey, and until 1930. *Page 13 
At the time of the death of Garrison, he owned and lived on a farm which comprised in area four hundred and fifty-four acres. This farm, by the will of the said Garrison, was devised to his son, Belford Garrison, who was, at the time of his father's death, an infant of about the age of seventeen years. I think that there can be no question but that Belford Garrison did not know the boundaries of the farm and that he thought it comprised tracts from 1 to 8 inclusive, as delineated on the map or survey annexed to the bill of complaint.
Belford went into possession after his father's death, i.e., rented the farm and exercised acts of ownership until January 16, 1917, when he conveyed the same to the complainant herein.
Complainant went into possession, and he did not know the exact boundaries of the land so conveyed to him. There can be no question, however, that he exercised full ownership of all of the tracts mentioned in the bill of complaint, save some parts of tract No. 11. I think that all of the parties probably considered the farm to comprise tracts 1 to 8, both inclusive.
As to tract No. 11, complainant had purchased from Francis Garrison a portion thereof in 1915, then believing that Garrison was the owner thereof, and having no idea that Belford Garrison was the owner by virtue of the devise from his father.
Thus the situation stood, until sometime late in 1929, when Francis Garrison made some claim to tract No. 2, whereupon complainant had a survey made, according to which it appeared that Francis Garrison had no title to tract No. 2 or to any of the other tracts from 1 to 11, both inclusive, and, if the survey was correct, it also appeared that Francis Garrison had no right to convey the portion of tract No. 11, which complainant had purchased from him as aforesaid. With this information in hand, complainant filed a bill in this court, asking for a construction of the will of William F. Garrison, with the result that a decree was entered therein, adjudging:
"That that portion of the last will and testament of William *Page 14 
F. Garrison, deceased, designated as the `fourteenth' paragraph thereof and reading as follows: `I do give, devise and bequeath to my son, Belford Garrison my farm and cottage, which I heired of my father,' was intended to and did include and comprehend all of the land and premises" comprised in tracts 1 to 11, both inclusive, and thus it became apparent that complainant did not have a clear title to tracts No. 2, No. 10 and No. 11, by reason of the two decrees in partition, now the subject of review.
William F. Garrison left him surviving seven children and, after specific devises of portions of his land, including the devise to Belford of his "farm and cottage," he devised the remainder thereof to these children, so that they each became entitled to a one-seventh interest in the real estate late of their father which he had not otherwise disposed of by his will.
A bill to partition these lands was filed in 1905 by William Garrison and others, against Belford Garrison and others, resulting in a decree that each of the children were entitled to a one-seventh interest in the land described in the bill, in which were included tracts No. 2, No. 10 and No. 11, the subject of this present controversy, and they were sold by a special master, as directed by the decree, to Francis Garrison as to tract No. 2 and to Edward P. Garrison as to tracts No. 10 and No. 11.
Thereafter, Edward P. Garrison died intestate, leaving six brothers and sisters and, in 1906, Francis Garrison filed a bill to partition land which he claimed he and his brothers and sisters owned as tenants in common, as heirs of Edward. A decree was entered in these proceedings and the land sold by a special master, in pursuance thereof and, at the sale, Francis Garrison became the purchaser, and there was included in the conveyance to him tracts No. 10 and No. 11 aforesaid.
So that, Francis Garrison had a paper title by virtue of a special master's deed, in the first partition suit, of tracts No. 2 and No. 10, and tract No. 11 by virtue of a special master's deed under the second partition suit, and in December *Page 15 
of 1932, this court, by its decree aforesaid, declared tracts No. 2, No. 10 and No. 11 to have been included in the specific devise in the will of William F. Garrison to Belford Garrison, and which lands Belford Garrison deeded to complainant in 1917, as aforesaid. The question before me is, should these partition decrees be reversed in so far as they relate to tracts No. 2, No. 10 and No. 11?
Defendants say that the decrees should not be reversed or corrected because Francis Garrison has been the record owner thereof for over twenty years, and the complainant has been guilty of laches in such manner as to bar his suit.
It must be borne in mind that Belford Garrison was an infant when the decrees in the partition suits were entered, and that he did not attain his majority until 1909.
The allegation upon which complainant rests his right to relief is, generally speaking, that the testimony upon which the special master advised the two decrees in the partition suits was false in so far as the same referred to tracts No. 2, No. 10 and No. 11, in that "said testimony made false reference to the identity and location thereof, thus causing the special master to find that said land was the property of all of the parties to said suits, rather than that it was, as to these tracts, lands devised to Belford by his father as `my farm and cottage.'" Proofs submitted before the master are before me and complainant also submitted evidence, at the final hearing, of a surveyor who surveyed the lands which this court has decreed were devised to Belford as "my farm and cottage," with which lands the surveyor is familiar, and I think there can be no question but that the testimony given before the special master in both partition suits was untrue as to the location of tracts No. 2, No. 10 and No. 11, as well as to the character of these lands.
It will serve no useful purpose to recite the testimony as given before the master in the partition suits as to locations,c., and compare it with the evidence adduced by complainant, showing the falsity and incorrectness thereof. Suffice it to say that my close study of the testimony of the witnesses appearing before the master convinces me that they knew *Page 16 
not whereof they spoke. Counsel for complainant, in his brief, has pointed out the incorrectness of the testimony as given before the master. I have checked it and consider it as a part hereof as a basis for my conclusions as above stated. In this connection, it must not be overlooked that there was no contradiction of the testimony of Mr. Rice, the surveyor produced by the complainant, as to location, c., of the various tracts of land, nor was there any attempt to contradict him in the discrepancies between the locations as given by the witnesses before the special master and the true location of these tracts. I conclude that there could not have been any successful contradiction because the surveyor evidently knew the facts upon which he based his testimony and gave the correct locations.
In further connection with the evidence submitted before the master, it may be noted that the witnesses were, in each instance, parties to the suits, with the exception of Mr. Bonnell, who testified in the first partition suit as to searches, and that in the second partition suit the only witness was Francis Garrison.
My conclusion is that there was error in both the partition decrees aforesaid and that that error was in including tracts No. 2, No. 10 and No. 11 as being the property of the seven children of William F. Garrison as tenants in common by virtue of the residuary devise in the will of the said William F. Garrison, when, as a matter of fact, the whole tract, from No. 1 to No. 11 inclusive, belonged to Belford Garrison by virtue of the specific devise of "my farm and cottage" in said will.
My further conclusion is that the error was brought about by evidence submitted before the special master, which was untrue, as above set forth, and I further find that neither Belford Garrison or the complainant ever knew of the exact situation until the decree construing the will aforesaid. Should these erroneous decrees, thus brought about, be permitted to stand? They were based on untrue testimony and were procured by fraud, as equity views it. I do not mean by this to say that any member of the Garrison family who *Page 17 
testified before the master, deliberately gave false testimony, or that they intentionally deceived the master. I do not believe they did, but they were mistaken in their locations and characteristics of the tracts of land about which they spoke and, as a result of their mistakes, the decrees were made. It is not necessary, in equity, that an intentional fraud be perpetrated; it is sufficient to find that a mistake was made upon which an erroneous decree has been entered and, upon such finding, relief may be granted. This proposition is supported by many authorities in our state.
Vice-Chancellor Fallon, in the case of Aetna Life InsuranceCo. v. Sussman, 111 N.J. Eq. 358, clearly sets forth, with elaborate supporting decisions, that the fraud upon which relief will be granted in equity requires only "proof of false representations, whether intentional or made through mistake," and "in equity, an untruthful representation of a material fact, though there be no moral delinquency, is deemed to be fraudulent."
In Prudential Insurance Co. v. Holmes, 111 N.J. Eq. 115,
the same vice-chancellor said:
"A court of equity will relieve from false representations whether they are intentional or made through mistake," and "that the fact that a misrepresentation in securing a policy of insurance was made innocently will not prevent rescission of a contract of insurance on the ground of misrepresentation."
These decisions of our courts, and many others, go to the extent that a concealment of a material fact or of material matter, whether that concealment be the result of moral delinquency or not, forms the basis for equitable relief.
The courts of our state have clearly defined under what circumstances decrees, obtained under the circumstances herein, will be opened.
In Brinkerhoff v. Franklin, 21 N.J. Eq. 334, Chancellor Zabriskie said:
"It has long been settled that an enrollment will be vacated and a decree opened when the decree has been made unjustly against a right or interest that has not been heard or protected, *Page 18 
when this has been done without the laches or fault of the party who applies."
In Jones v. Fayerweather, 46 N.J. Eq. 237 (at p. 244), the court said:
"In New Jersey, it seems to be well settled that a decree may be altered, amended, vacated or set aside at any time whenever the equities of the case require it to be done."
In Steinhardt Bros. Co. v. Cohen, 86 N.J. Eq. 323, the court said:
"The court of equity will always grant a rehearing where fraud or injustice has been done."
The late Chancellor Walker, in the case of Hudson Trust Co.
v. Boyd, 80 N.J. Eq. 267, said:
"After decree, the proceedings are under the control of the court and will only be opened in order to prevent fraud or mistake," and "this court will jealously guard its records and will see to it that they are only opened and vacated when the ends of justice require it."
The learned chancellor concluded that:
"After decree the proceedings are under the control of the court and will only be opened to let in a defense, prevent fraud or mistake, or otherwise further the ends of justice."
As to the proper method of reviewing final decrees, the case ofWatkinson v. Watkinson, 68 N.J. Eq. 632, is the leading case in this state, and that case has been cited with approval by the court of errors and appeals in Mitchell v. Mitchell, 97 N.J. Eq. 298,
and has been followed in numerous cases, among others,Jones v. Jones, 82 N.J. Eq. 558.
From the above, it would appear that the decrees should be opened and corrected, because (a) an injustice had been done and the ends of justice require it; (b) fraud; (c) new matter had been discovered after the decrees were entered, which would not, under the facts before me, have been used when the decrees were made. By this I mean, the decree of this court, construing the will of William F. Garrison, as a result of which, complainant herein presents to this court the new facts as disclosed by that decree, which new facts and matter are that under the terms of that will complainant's *Page 19 
grantor, Belford Garrison, was not a tenant in common of thelocus in quo, entitled to a one-seventh interest therein, but the owner thereof in fee. Is complainant barred from relief from laches? As before stated, Belford Garrison was an infant at the time of entering of the decrees. Belford went into possession of the locus in quo and his right to possession was never attacked. Complainant succeeded Belford in possession and his right thereto was never questioned, until 1929, at which time he immediately caused a survey to be made, ascertained the boundaries, which he had not theretofore definitely known, filed his bill for a construction of the will of William F. Garrison, and obtained his decree and thereupon filed this bill of review. It is urged that when he took his deed from Belford Garrison, he should have had a survey made. It would have been wise, but the fact that Belford had been in possession since 1904, without molestation, was not an indication that a survey was necessary. Complainant farmed the tillable soil, cut wood from the woodland, cut hay from other portions and trapped or leased for trapping, other portions of the tract. There was nothing to suggest hostility to his possession.
But, it is said that even if this is so with respect to tracts from No. 1 to No. 10, it is not so as to tract No. 11, because complainant purchased a portion of that tract from Francis Garrison in 1915, and that if he had made a survey at that time, of that tract, he would have discovered that Belford owned it.
It is true that complainant did purchase the tillable land (about twenty acres) located in the center of tract No. 11 in 1915, prior to his purchase in 1917, from Belford. Before he made settlement for this tract, he employed a skilled conveyancer, with instructions to search the title. That search disclosed nothing other than title in William F. Garrison and the vesting of title in Francis Garrison through mesne conveyances. He supposed Francis owned it and did not ascertain where the true title rested until his right to tract No. 2 had been attacked by Francis. It is true that Francis had cut wood and exercised other rights of possession *Page 20 
to the parts of tract No. 11 not sold to complainant, but this did not constitute notice to complainant, because he believed that Francis owned the land and had a right to possession. This was the only tract where anyone exercised any acts of possession or dominion which could be notice to complainant of any hostile claim. As to tract No. 10, Francis said he thought he may have cut wood near the boundary between tracts No. 10 and No. 11. He may have done so. I doubt it; but if he did, the trespass was inconsequential and unknown to complainant.
We thus have urged, as an indication of laches, lapse of time and failure to make an early survey and searches.
On the question of laches, there are numerous decisions in this state and there is no question but that each case rests on its own set of facts and, as said in Robertson v. Miller, 3 N.J. Eq. 451,
on an application to open a final decree after a lapse of time:
"Applications of this character address themselves to the sound discretion of the court, arising out of the circumstances of each case as it is presented. No general rule can be found which will apply to all."
The general rule is stated clearly and concisely in 21 C.J.230 § 224:
"As a rule one in peaceable possession of real estate under claim of right may rest in security until his title or possession is attacked, and the failure to appeal to equity during that period is no defense to a suit subsequently brought to establish, enforce, or protect his right."
So, in this case, the complainant and his grantor had a right to enjoy their peaceable possession of the locus in quo and rest in security until the latter part of 1929, when the title was attacked.
Mere lapse of time does not bar relief, but may be explained.New-Barbadoes Toll Bridge Co. v. Vreeland, 4 N.J. Eq. 157.
In Wilson v. Stevens, 105 N.J. Eq. 377 (at p. 387), Vice-Chancellor Buchanan said:
"Laches is more than mere lapse of time, its essence is estoppel. * * * It involves a combination of negligence *Page 21 
on the part of complainant, good faith on the part of the defendant, and prejudice occasioned [or the likelihood thereof] to defendant."
In Farr v. Hauenstein, 69 N.J. Eq. 740, the court said:
"Mere delay does not, however, necessarily result in any such result. Vice-Chancellor Green said, in Tynan v. Warren,53 N.J. Eq. 313 (at p. 321): `I do not understand that mere delay in bringing a suit will deprive a party of his remedy, unless such neglect has so prejudiced the other party by loss of testimony or means of proof, or changed relations, that it would be unjust to now permit him to exercise his right.'"
 Other cases are: Massie v. Asbestos Brake Co., 95 N.J. Eq. 298; Sobota v. Shaffer, 105 N.J. Eq. 459.
Going further back into the reports: King v. Morford, 1 N.J. Eq. 274; Obert v. Obert, 12 N.J. Eq. 423; Cawley v. Leonard,28 N.J. Eq. 467; Daggers v. Van Dyck, 37 N.J. Eq. 130;LeGendre v. Byrnes, 44 N.J. Eq. 372; Tynan v. Warren supra;Holzer v. Thomas, 69 N.J. Eq. 515.
It is apparent, under the facts before me, that neither complainant nor his predecessor in title, have prejudiced any right of defendant, who got title through erroneous decrees of premises then in possession of an infant and which continued in his possession or that of complainant, with the exception of a part of tract No. 11, without notice of any claim of a right to possession on the part of defendant or anyone else until 1929, whereupon, complainant vigorously repelled the claim. Neither has the delay prejudiced the defendant so that by reason thereof: "the court is precluded from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity doubtful or impossible, as through loss or obscuration of evidence of the transaction in issue," nor has there "occurred in the meantime a change in conditions that would render it inequitable to enforce the right asserted." 21 C.J. 221.
None of these elements of bar to relief are here present. It is true that Francis Garrison paid his good money for tracts No. 2, No. 10 and No. 11, but so did complainant. It *Page 22 
is true that if a decree goes for complainant, defendant will lose his money, but if the decree be otherwise, complainant will lose what he paid Belford Garrison for those tracts and the possession thereof, which he has enjoyed since the purchase. It was not the fault of the complainant that the erroneous decree were entered, but it was partly, at least, the fault of the defendant, Francis Garrison, in that, in the first decree, it was partly on his evidence that the decree was made, and in the second case, his was the only evidence upon which the master acted.
Under all of the circumstances before me, I am satisfied that the complainant is not barred from the belief which he seeks.
As to the defendants Barckley and Dessa Grace I held at the final hearing that the bill should be dismissed, and such will be the decree in so far as Mr. and Mrs. Grace are concerned, and I will advise a decree for complainant as to the other defendants, which decree may be settled on notice, if the parties are unable to agree.