On October 22d 1920, the defendant Lenox Realty Company entered into a written contract with Florence Conrad, the complainant, to convey to her the premises known by the street number 37 Franklin street, in the city of Newark, county of Essex, and State of New Jersey, for the sum of $14,000. The title was to pass on or before May 1st, 1921; time being of the essence of the contract. Five hundred dollars ($500) was paid upon the signing of the contract; five hundred dollars ($500) was also paid on December 1st, 1920. When title was to be passed, the complainant was to pay an additional sum of $2,000, assume a building and loan mortgage *Page 593 
of $5,600 and the balance of the consideration was to be in the form of a second mortgage for $5,400. The $2,000 which was required to be paid under the contract on or before May 1st, 1921, was not paid within the time limited. The complainant never acquired the title. The defendant Lenox Realty Company retained the title until about 1930 when it was conveyed, by the defendants, to the United States government for a post office site, for a consideration of $35,400. The complainant seeks to impress a trust against this fund. She, in part, alleges that in conformity with the terms of her contract, the defendant executed a deed of conveyance for the premises to her; that she in turn executed and gave back a mortgage; that, by agreement, Berry, the defendant, held her deed in escrow until such time as she paid the sums mentioned in the contract of purchase.
The defendants admit giving the complainant several extensions of the time of payment of the purchase price, and they admit that different sums of money were received from the complainant on account of the contract. The payments were made in odd sums and at irregular intervals. Berry, the defendant, said that for several years he countenanced the complainant's delay, but finally he became impatient with the complainant's unchanging irregularity and delay in making the payments, and, several times, notified her to this effect; that in response to one of these communications, she, some time in the year 1924, stated to him that she was no longer able to continue to make the payments as they fell due, and that she could not, and would not, go through with the further performance of her part of the contract. He said he tried to persuade her to alter her expressed determination, but without avail; from then, he asserts, she disregarded her obligation under the contract, repudiated its terms, and abandoned it. The complainant, according to Berry, from the time of the alleged abandonment, agreed to remain in the premises as a tenant at $75 per month. These allegations of Berry the complainant flatly contradicts; she denies that she abandoned the contract, or that she had any agreement with the defendants to do so. *Page 594 
The sixth paragraph of the defendants' answer, in part, reads:
"Nor was the contract closed at the time stated therein, but the contract terms were extended to permit payments for a reasonable time beyond the time limited in the contract, and that after said payments had been made the complainant advised the defendants on or about January, 1924, that she could not complete the contract, and it was mutually agreed that the contract should be abandoned. * * * Complainant agreed to and did remain on the premises as a tenant until the vacation thereof by her when the said premises were taken by the United States government. On the abandonment of the contract it was agreed that sums paid thereon should be credited on the rent thereafter to accrue, and at the time of the vacation of the premises the complainant was indebted to the defendants for rent, after allowing her all credits."
Since the defendants allege an abandonment and surrender of the contract the burden rests with them to establish the allegation by convincing evidence. This, I believe they have done. MercerElectric Manufacturing Co. v. Connecticut ElectricManufacturing Co., 87 Conn. 691; 89 Atl. Rep. 909; Wood v.Blanchard, 212 Mass. 53; Sessa v. Arthur, 183 Mass. 230;Joseph S. Naame Co. v. Satanov Real Estate and Mortgage Co.,103 N.J. Eq. 386; Collins Realty Co. v. Sale, 104 N.J. Eq. 138;Knight v. Gulf Refining Co., 311 Pa. 357; 166 Atl. Rep. 880.
The defendants' book accounts in which transactions with the complainant appear, show payments on account of the "purchase of the property" and "payments as rent." These variations in the book accounts run over a period of years.
Karl, a former employe of the defendants, appeared as a witness for the complainant; he testified to the complainant's accounts in the defendants' books. He gave every indication of being strongly prejudiced against the defendants. His belligerent attitude toward the defendants did not add to his credibility. He said he had never heard that Mrs. Conrad occupied the premises as a tenant (page 78 of testimony). On cross-examination (page 80 of testimony) he was asked these questions: *Page 595 
 "Q. Did you ever see this D-1 for identification of December 28th, 1923? A. I cannot say I saw them personally.Q. Did you know that there was a copy given to Mrs. Florence Conrad to be applied on account of rent? A. I didn't see that, no. Q. Did you ever enter on the books a check for $230 at the time and cash of $20? A. According to the receipt I probably did make such an entry."
On recross-examination (page 209), he was asked these questions:
"Q. Mr. Karl, do you remember being asked previously — `did you ever enter upon the books any monthly rental that Mrs. Conrad owed?' Do you remember that? A. Yes. Q. And your answer, do you remember that? A. I believe I said no. Q. Since then you have been at my office and looked over these books, haven't you? A. Yes, sir. Q. And you have seen a score or more of entries in your own handwriting here of Mrs. Conrad's marked rent by yourself, haven't you? A. Yes."
Mrs. Conrad's denial that she was ever a tenant in the premises is obviously contradicted by her possession of receipts for "rent" given her by the defendants. Her receipts showing payment of rent are in evidence. As a tenant, she was made a party defendant to the condemnation proceedings instituted by the United States government to acquire the property. At the condemnation hearing, she appeared as a tenant and, apparently, she seemed satisfied to be regarded as such, since she offered no protest against the designation. She is an alert, wide-awake and intelligent business woman. She has had some experience in realty transactions and, evidently, at no time, was she unmindful of her position in the instant case. Her witness, Karl, who attempted to bolster up her doubtful cause, failed miserably. The above recitation of a part of his testimony, shows why. The complainant's testimony, the evidence of her witness, Karl, and their general attitude throughout the case, did not convince me of the justice of the complainant's suit. Mrs. Conrad's unsatisfactory and ambiguous narration of the attempt to observe the terms of the contract by an execution of a deed to the premises *Page 596 
by Berry, which deed, Karl said, Berry never delivered, but held in escrow; then complainant's testimony that she signed a deed, but, subsequently, declared it was a mortgage, and gave it to Berry, gives no clear light or convincing evidence as to what, if anything, was done by complainant towards consummating the transaction between her and the defendants. What does clearly appear is: The defendant Berry paid the taxes, and interest on the mortgage, on the property; that there were continued defaults by complainant to meet the terms of the contract, and an apparent indifference by her of its terms.
Ten years, or thereabout, elapsed between the execution of the contract between the parties, and the sale of the property to the United States government. The defendants evidently were able and willing, at all times, to perform their part of the contract; while the complainant, at no time, was. Then, after a long lapse of time, and after the defendants received an attractive price, for the complainant, who consistently defaulted, to come into equity and say: "that property belonged to me; I am entitled to the proceeds of sale," is an attitude which is inequitable, which cannot be sustained, and will not be approved by this court.
In Meidling v. Trefz, 48 N.J. Eq. 638, the court said:
"Specific performance of such a contract will not be decreed where it appears that the buyer has unreasonably delayed either to do acts required to be done by him to complete the contract, or to seek its enforcement, and, during such delay, a material increase in the value of the land has taken place."
In Cranwell v. Clinton Realty Co., 67 N.J. Eq. 540,
Vice-Chancellor Garrison said:
"The court will not countenance unreasonable delay, nor will it aid a vendee to obtain an unfair advantage by being passive if the value of the property is lessening or stable and quickening into activity, only when the value of the property has risen."
In Cohen v. Miller, 97 N.J. Eq. 440, the court said:
"It seems to me that it is unfair to the defendants to permit the complainant to delay a considerable time after his *Page 597 
refusal to take title, defects and all, and then decide, in view of the increase in value of the property, that he will take it."
In O'Neill v. Supreme Council, c., 70 N.J. Law 410, the court in part said:
"* * * Where a contract embodies mutual and interdependent conditions and obligations and one party either disables himself from performing, or prevents the other from performing, or repudiates in advance his obligations under the contract and refuses to be longer bound thereby, communicating such repudiation to the other party, the latter party is not only excused from further performance on his part, but may, at his option, treat the contract as terminated for all purposes of performance * * *."
In New-Barbadoes Toll Bridge Co. v. Vreeland, 4 N.J. Eq. 157
(at p. 160), the court said:
"The court will look to it that no experiment is practiced on the part of the complainant, however, as by waiting to see whether it is to his advantage to have the agreement carried into effect or not, before he seeks relief, and if the delay under the circumstances amounts to an abandonment of the contract, relief will be denied."
In Stoutenburgh v. Tompkins, 9 N.J. Eq. 332 (at p. 337), Chancellor Williamson said:
"A written contract may be abandoned by parol, if not so as to destroy the rights of the parties at law, at least so far as to constitute a good defense to a bill for specific performance. So if it has been varied by a subsequent parol agreement, which has been carried out, and so acted upon by the parties that the written agreement cannot be enforced without injury to one party, it is a good ground of defense, and may be proved as such."
See, also, Austin v. Young, 90 N.J. Eq. 47; Vickers v.Electrozone Commercial Co., 67 N.J. Law 665; Holt v. UnitedSecurity Life Insurance and Trust Co., 74 N.J. Law 795; Daniels
v. Newton, 114 Mass. 530; 19 Am. Rep. 384; 6 R.C.L. 1012; King
v. Morford, 1 N.J. Eq. 274.
I find that the complainant is entitled to no part of the moneys the defendants received from the United States government, *Page 598 
and I shall advise an order denying the complainant's application to impress a trust upon those moneys so received from the United States government for the premises. I shall further advise that the defendants do account to the complainant for such moneys received by them from the complainant on account of the purchase price which were not applied to rent. *Page 599